**RHOADES LLC**
Mark L. Rhoades
One Liberty Place, 36th Floor
1650 Market Street
Philadelphia, PA  19103
Telephone:  215-496-9002
Email:  rhoades@rhoadesllc.com

**Counsel for Plaintiff and the Class**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MELISSA FOGARTY**, | : | |
| On Behalf of Herself and All | : | |
| Others Similarly Situated, | : | Civil Action No. _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **CHURCH & DWIGHT, INC.;** | : | **JURY TRIAL DEMANDED** |
| **THE PROCTOR & GAMBLE** | : | |
| **COMPANY, INC.; REVLON, INC.,;** | : | |
| **THE DIAL CORPORATION; and** | : | |
| **HENKEL CORPORATION** | : | |
| | | |
| Defendants. | | |

**CLASS ACTION COMPLAINT**

Melissa Fogarty ("Plaintiff"), on her own behalf and on behalf of the Class, by and through her attorney, alleges as follows:

**<u>NATURE OF THE CASE</u>**

1.      This case is brought to remedy the unfair, deceptive and unlawful business practices of the Defendants regarding their marketing and sales of "unscented" deodorant products.  Although each of the Defendants manufactures, markets and sells deodorant that is labeled as "unscented", each of the products at issue in this case has a noticeable and unmistakable scent detectible by any reasonable consumer.

2.      Plaintiff and the Class relied on the Defendants' representations that their products were "unscented" when they purchased the products.  The primary reason that Plaintiff purchased the Defendants' products was the representation that each of the products was "unscented."

3.      By relying upon the Defendants' representations that their products were "unscented", Plaintiff and the Class have been damaged and suffered an ascertainable loss by purchasing products that claimed to be "unscented" but were not and are not suitable for their intended use as an unscented deodorant.

4.      Given the packaging of the Defendants' "unscented" deodorant products, it was not possible for Plaintiff and the Class to discern that the products were not "unscented" until after the products were purchased.

5.      Plaintiff and the Class did not receive the benefits of the bargain – an unscented deodorant – when they purchased the Defendants' products.  Instead,

they received a produce with a noticeable scent that was unusable as an "unscented" deodorant.

6.     The Defendants know that a segment of their customers seek out unscented deodorant products and that these customers make decisions based on the labeling of products.  That the Defendants claim that their products are "unscented" when they are not is a deceptive and misleading practice designed solely to cause consumers to buy their products.

7.     At all relevant times, the Defendants knew that their products were not "unscented."

8.     Given the packaging of some of the Defendants' products, it was impossible for Plaintiff and the Class of reasonable consumers to detect the scent of the deodorants prior to purchase.  In addition, for those customers who purchased the Defendants' products through mail order like Plaintiff, it was impossible for them to detect the scent of the Defendants' "unscented" products prior to purchase.

9.     This nationwide class action seeks to provide redress to consumers who have been harmed by the false and misleading labeling of the Defendants' "unscented" deodorants.  The Defendants' conduct has included the systematic and continuing practice of disseminating false and misleading information in New Jersey and throughout the United States with their product labeling which was intended to induce unsuspecting consumers, including Plaintiff and the Class, into purchasing their "unscented" products.

10.     Plaintiff asserts claims on behalf of herself and the Classes (defined below) for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*.

("CFA") or, in the alternative, under the consumer fraud acts of other states where members of the Class reside.

11.     With this action, Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, an injunction, attorneys' fees, costs and all other relief available to the Class as a result of the Defendants' unlawful conduct.

## THE PARTIES

12.     Plaintiff, Melissa Fogarty ("Fogarty" or "Plaintiff"), is an adult individual who at all times relevant to this action has been a resident of Cherry Hill, New Jersey.

13.     Defendant Church & Dwight, Inc. ("Church & Dwight") is a New Jersey corporation and, at all times relevant to this action, has maintained its principal place of business at 469 North Harrison Street, Princeton, New Jersey.  Church & Dwight is a citizen of New Jersey.  All critical decisions concerning the decision to market its products as "unscented" were made by Church & Dwight employees located in New Jersey.  Church & Dwight sold its products through retail stores and through mail order and internet-based retailers in the state of New Jersey and throughout the United States.  Church & Dwight knew, or should have known, that the products it was labeling, marketing and selling as "unscented" were not unscented and that by representing their products as "unscented" when they were not, it was making false and misleading representations concerning its products. The Church & Dwight products at issue in this case include, but are not limited to, Arm & Hammer Essentials Deodorant with Natural Deodorizers Unscented ("Arm &

Hammer Essentials") and Arm & Hammer UltraMax Unscented ("Arm & Hammer UltraMax").

14.     Defendant Procter & Gamble Company ("Procter & Gamble") is an Ohio corporation and, at all times relevant to this action, has maintained its principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio.  Procter & Gamble is a citizen of Ohio.  Procter & Gamble sold its products through retail stores and through mail order and internet-based retailers in the state of New Jersey and throughout the United States.  Procter & Gamble knew, or should have known, that the products it was labeling, marketing and selling as "unscented" were not unscented and that by representing their products as "unscented" when they were not, it was making false and misleading representations concerning its products.  The Procter & Gamble product at issue in this case includes, but is not limited to, Secret Clear Gel Outlast Unscented ("Secret Outlast").

15.     Defendant Revlon, Inc. ("Revlon") is a Delaware corporation and, at all times relevant to this action, has maintained its principal place of business at 237 Park Avenue, New York, NY.  Revlon is a citizen of Delaware and New York.  Revlon sold its products through retail stores and through mail order and internet-based retailers in the state of New Jersey and throughout the United States.  Revlon knew, or should have known, that the products it was labeling, marketing and selling as "unscented" were not unscented and that by representing their products as "unscented" when they were not, it was making false and misleading representations concerning its products.  The Revlon products at issue in this case include, but are not limited to, Mitchum Men's Advance Unscented ("Mitchum

Men's"); Mitchum Women's Advanced Unscented ("Mitchum Women's"); Mitchum

Men's Clinical Unscented ("Mitchum Men's Clinical"); and Mitchum Smart Solid

Clinical Performance ("Mitchum SmartSolid").

      16.    Defendant, The Dial Corporation ("Dial") is a Delaware corporation

and, at all times relevant to this action, has maintained its principal place of business

at 7201 E. Henkel Way, Scottsdale, Arizona.  Dial is a citizen of Delaware and

Arizona.  Dial sold its products through retail stores and through mail order and

internet-based retailers in the state of New Jersey and throughout the United States.

Dial knew, or should have known, that the products it was labeling, marketing and

selling as "unscented" were not unscented and that by representing their products

as "unscented" when they were not, it was making false and misleading

representations concerning its products.  The Dial product at issue in this case

includes, but is not limited to, Dry Idea Advanced Dry Unscented ("Dry Idea").

      17.    Defendant, Kao USA ("Kao") is a Delaware corporation and, at all

times relevant to this action, has maintained its principal place of business at  312

Plum Street, Cincinnati, Ohio.  Kao is a citizen of Delaware and Ohio.  Kao sold its

products through retail stores and through mail order and internet-based retailers

in the state of New Jersey and throughout the United States.  Kao knew, or should

have known, that the products it was labeling, marketing and selling as "unscented"

were not unscented and that by representing their products as "unscented" when

they were not, it was making false and misleading representations concerning its

products.  The Kao product at issue in this case includes, but is not limited to, Ban

Unscented Invisible Solid ("Ban").

18.     Arm & Hammer Essentials, Arm & Hammer UltraMax, Secret Outlast, Mitchum Men's, Mitchum Women's, Mitchum Men's Clinical, Mitchum SmartSolid, Dry Idea and Ban shall be referred to collectively as "the Products."

## JURSIDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendants are citizens of different states.

20.     This Court has personal jurisdiction over the Defendants because the Products are advertised, marketed, distributed and sold throughout the United States, including New Jersey.   The Defendants engaged in the actions alleged in this Complaint throughout the United States, including New Jersey.  The Defendants have sufficient minimum contacts with New Jersey and have otherwise intentionally availed themselves of the markets in New Jersey, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  Finally, the Defendants are engaged in substantial and not isolated activity within the state of New Jersey.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because one of the Defendants, Church & Dwight, is a resident of this judicial district and Church & Dwight and all of the other Defendants conduct business in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims took place within and emanated within this judicial district.  Each of the

Plaintiff's purchases of the Defendants' products was made from this judicial

district.

## FACTUAL BACKGROUND

**The Products**

22.     This class action is being brought against each of the Defendants for

the protection of all purchasers of the Defendants' purportedly "unscented"

products that have an unmistakable scent.

23.     Despite the fact that each of the Defendants label and market their

Products as "unscented", they have a scent that is easily detectable to the reasonable

consumer.

24.     Prior to their purchase of the Defendants' products, Plaintiff and the

members of the Class were unable to determine that the Products had a scent

despite being labeled and marketed as being "unscented."  Because of the packaging

of the Defendants' Products, Plaintiff and the Class, as reasonable consumers, were

unable to detect the scent of the Defendants' Products.  The Defendants' packaging

included foil and plastic barriers attached to the top of the product with adhesive or

with form fitting plastic caps that were attached to the deodorant beneath the

plastic cap that formed the outer casing of the packaging.  The foil and plastic

barriers, as well as the form fitting plastic caps, are not intended to be opened prior

to purchase.   Moreover, to the extent that Plaintiff and the Class purchased the

Products through mail order or on-line, they were unable to detect the Products'

scent until after purchase.  Therefore, Plaintiff and the Class could not "smell test"

the products before purchasing them.

25.     Because Plaintiff and the Class intended to purchase products that were, in fact, unscented, the Defendants' labels are misleading and resulted in Plaintiff and members of the Class purchasing the Defendants' Products that they otherwise would not have if they were labeled correctly.

26.     Church & Dwight's product, Arm & Hammer Essentials, clearly states on its principal display panels ("PDP") labels that it is "unscented" without any qualification:



27.     However, rather than being "unscented", Arm & Hammer Essentials has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Arm & Hammer Essentials has an unmistakable citrus scent.

28.     The fact that Arm & Hammer Essentials has a citrus scent is due to the fact that it includes the following ingredients, among others:  "Citrus Aurantium Dulcis (Orange) Peel Oil", "Anthemis Nobilis (Chamomile) Flower Oil", "Coriandrum Sativum (Coriander) Fruit Oil", and "Pelargonium Graveolens (Geranium) Flower Oil" among others.

29.     Church & Dwight's product, Arm & Hammer UltraMax, clearly states on its PDP label that it is "unscented" without any qualification:



30.     However, rather than being "unscented", Arm & Hammer UltraMax has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Arm & Hammer UltraMax has a clean, fresh, powdery scent.

31.     The fact that Arm & Hammer UltraMax has scent is due to the fact that it includes as an ingredient "Ethylene Brassylate" among others.  Ethylene Brassylate is a macrocyclic ester perfumery ingredient that embodies sweet and substantive musk notes.  Moreover, its molecular structure is similar to that of naturally occurring must components.   Ethylene Brassylate is sometimes referred to as "Musk T".

32.     Proctor & Gamble's product, Secret Outlast, clearly states on their PDP labels that it is "unscented" without any qualification:



33.     However, rather than being "unscented", Secret Outlast has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Secret Outlast has a clean, fresh, alcohol, powdery scent.

34.     The fact that Secret Outlast has scent is due to the fact that it includes as an ingredient "fragrance**masking fragrance".

35.     Secret Outlast is sold with a clear plastic film that is attached to the dispensing area of the packaging with adhesive that is not intended to be removed until after the product is purchased.  The presence of the clear plastic film prevents reasonable consumers from detecting the scent of Secret Outlast until after it is purchased and the film is removed.

36.     Revlon's product, Mitchum Men's, clearly states on its PDP labels that it is "unscented" without any qualification:



37.     However, rather than being "unscented", Mitchum Men's has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Mitchum Men's has a clean, fresh, alcohol, musky scent.

38.     The fact that Mitchum Men's has scent is due to the fact that it includes as an ingredient "Ethylene Brassylate" among others.  Ethylene Brassylate is a macrocyclic ester perfumery ingredient that embodies sweet and substantive musk notes.  Moreover, its molecular structure is similar to that of naturally occurring must components.   Ethylene Brassylate is sometimes referred to as "Musk T".

39.     Mitchum Men's is sold with a clear plastic film that is attached to the dispensing area of the packaging with adhesive that is not intended to be removed until after the product is purchased.  The presence of the clear plastic film prevents reasonable consumers from detecting the scent of Mitchum Men's until after it is purchased and the film is removed.

40.     Revlon's product, Mitchum Women's, clearly states on its PDP labels that it is "unscented" without any qualification:



41.     However, rather than being "unscented", Mitchum Women's has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Mitchum Women's has a clean, fresh, alcohol, musky scent very similar to the scent of Mitchum Men's.

42.     The fact that Mitchum Women's has scent is due to the fact that it includes as an ingredient "Ethylene Brassylate" among others.  Ethylene Brassylate is a macrocyclic ester perfumery ingredient that embodies sweet and substantive musk notes.  Moreover, its molecular structure is similar to that of naturally occurring must components.   Ethylene Brassylate is sometimes referred to as "Musk T".

43.     Mitchum Women's is sold with a clear plastic film that is attached to the dispensing area of the packaging with adhesive that is not intended to be removed until after the product is purchased.  The presence of the clear plastic film prevents reasonable consumers from detecting the scent of Mitchum Women's until after it is purchased and the film is removed.

44.     Revlon's product, Mitchum Men's Clinical, clearly states on its PDP labels that it is "unscented" without any qualification:



45.     However, rather than being "unscented", Mitchum Men's Clinical has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Mitchum Men's Clinical has a clean, fresh, musky and powdery scent.

46.     The fact that Mitchum Men's Clinical has scent is due to the fact that it includes as ingredients "Aloe Barbadensis Leaf Extract" and "Ethylene Brassylate" among others.  Ethylene Brassylate is a macrocyclic ester perfumery ingredient that embodies sweet and substantive musk notes.  Moreover, its molecular structure is similar to that of naturally occurring must components.   Ethylene Brassylate is sometimes referred to as "Musk T".

47.     Mitchum Men's Clinical is sold with a clear plastic film that is attached to the dispensing area of the packaging with adhesive that is not intended to be removed until after the product is purchased.  The presence of the clear plastic film prevents reasonable consumers from detecting the scent of Mitchum Men's Clinical until after it is purchased and the film is removed.   Moreover, Mitchum Men's Clinical is also sold and shelved with an outer carton further deterring the reasonable consumer from performing a "scent test" prior to purchase.

48.     Revlon's product, Mitchum SmartSolid, clearly states on its PDP labels that it is "unscented" without any qualification:

20



49.     However, rather than being "unscented", Mitchum SmartSolid has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Mitchum SmartSolid has a clean, fresh, alcoholic, antiseptic scent.

50.     The fact that Mitchum SmartSolid has scent is due to the fact that it includes as an ingredient "Parfum (Fragrance)."

51.     Mitchum SmartSolid is sold with a clear plastic dome that is attached the actual deodorant product.  The printing on the dome states:  "TO REMOVE DOME TWIST UP PRODUCT".  The clear plastic dome is intended to be removed and discarded by the purchaser of the product after purchase given that the product must be "twisted up" to be removed.  The presence of the dome prevents reasonable consumers from detecting the scent of Mitchum SmartSolid until after it is purchased and the dome is removed.

52.     Dial's product, Dry Idea, clearly states on its PDP label that it is "unscented" without any qualification:



53.     However, rather than being "unscented", Dry Idea has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase.  Dry Idea has a clean, fresh, alcoholic, antiseptic scent.

54.     Dry Idea is sold with a clear plastic film that is attached to the dispensing area of the packaging with adhesive that is not intended to be removed until after the product is purchased.  The presence of the clear plastic film prevents reasonable consumers from detecting the scent of Dry Idea until after it is purchased and the film is removed.

55.     Kao's product, Ban, clearly states on its PDP label that it is "unscented" without any qualification:



56.     However, rather than being "unscented", Ban has an unmistakable scent.  The scent is readily detectible by any reasonable consumer after purchase. Ban has a clean, fresh, natural scent.

57.     The fact that Ban has scent is due to the fact that it includes as ingredients "hordeum distichon (barley) extract", "phellodendron amurense bark extract", and "santalum album (sandalwood) extract" among others.

58.     Ban is sold with a clear plastic dome that is attached the actual deodorant product.  The clear plastic dome is intended to be removed and discarded by the purchaser of the product after purchase.  The presence of the dome prevents reasonable consumers from detecting the scent of Ban until after it is purchased and the plastic dome is removed.

**The Defendants' Use of "Unscented" is False, Deceptive and Misleading**

59.     The definition of "scented" includes "a distinctive odor, especially when agreeable."  http://dictionary.reference.com/browse/scented?s=t. Concomitantly, the definition of "unscented" is without a distinctive odor.

60.     The Defendants' representations included on the PDP label that their Products are "unscented" are false and misleading because the Products have a scent.   By including the word "unscented" on the PDP labels of their Products, Plaintiff and the Class are lead to believe falsely that the Defendants' Products are unscented.

61.     The Defendants' representation that their Products are "unscented" is false, deceptive and misleading.  As a result of these representations, the Defendants

were able to sell their Products to Plaintiff and members of the Class that were

seeking deodorants that were truly unscented.

62.     Based upon the Defendants' representations, Plaintiff and the

members of the Class viewed the label of the Defendants' products and purchased

the Products.  Had Plaintiff and the members of the class been aware of the truth

that the Defendants' Products were in fact scented, they would not have purchased

the Products.

63.     Because each individual purchase of the Products is an insignificant

purchase in terms of dollars spent, Plaintiff and the Class, until now, have not sought

refunds of their purchase prices paid for the Products.

64.     However, because the mislabeling of the Products constitutes a

violation of the New Jersey Consumer Fraud Act, as well as the consumer fraud laws

of other states, Plaintiff now brings this action to seek recovery on behalf of herself

and the Class for the Defendants' mislabeling of their Products.

65.     Plaintiff and all members of the Class viewed the Defendants'

misleading product labeling, reasonably relied in substantial part on the

representations made on the labeling, and were thereby deceived in their decisions

to purchase the Defendants' Products.

**Plaintiff's Experience with the Defendants' Products**

66.     Plaintiff sought to purchase unscented deodorants for her family

members.  Plaintiff first bought Mitchum Men's and discovered that it had an

unmistakable scent despite being labeled as "unscented."  Not satisfied with her

purchase of Mitchum Men's, Plaintiff then began searching for another other

deodorants that were unscented relying exclusively on the representation of the Defendants on the labels of the Products that they were "unscented."

67.     In October 2014, Plaintiff purchased all of the Defendants' Products at issue in this Complaint, except Mitchum Men's, from the online retailer, Drugstore.com.  Plaintiff purchased all of the Defendants' Products in hopes of finding one unscented deodorant that was truly unscented.

68.     Plaintiff purchased the Defendants' Products by searching for deodorants on the Drugstore.com website that were listed as "unscented."  She also reviewed photos of the package of the Defendants' Products on the Drugstore.com website.  However, upon receipt of her order, and opening all of the packages, she determined that all of the Defendants' Products were, in fact, scented.

69.     Plaintiff suffered an ascertainable loss in the amount of the purchase price for the Defendants' Products as a result of the Defendants' conduct as described herein, including the fact that the Products were scented when they were labeled as "unscented."  Because the Products were scented, Plaintiff could not use them for their intended purposes.

70.     Plaintiff would not have purchased the Defendants' Products had she know the truth that the Products were scented and had not been misled by the labeling stating that the Products were "unscented."

**New Jersey's Substantive Laws Apply to the Proposed Class**

71.     New Jersey's substantive laws may be applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend, § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

72.     New Jersey has significant contacts, or a significant aggregation of contacts, to the claims asserted by Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

73.     At least one of the Defendants' headquarters and principal place of business are located in New Jersey and that Defendant, Church & Dwight, also owns property in New Jersey.  Moreover, all of the Defendants conduct substantial business in New Jersey and sell their products in New Jersey.   Therefore, New Jersey has a significant interest in regulating Defendant's conduct under its laws. The Defendants' decisions to sell their Products in New Jersey and avail themselves of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

74.     A substantial number of Class members reside in New Jersey.

75.     New Jersey also is the state from which at least one of the Defendants' misconduct emanated.  This conduct similarly injured and affected Plaintiffs and Class members.  For instance, Church & Dwight's marketing and advertising efforts (including Product labeling) were created in and orchestrated from the location of its present headquarters in New Jersey.

76.     The application of New Jersey's laws to the Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and the Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this proposed consumer class action on behalf of herself and all other persons similarly situated in the United States, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

78.     The Class that Plaintiff seeks to present is defined as follows:

**Class**:

All person who purchased Arm & Hammer Essentials Deodorant with Natural Deodorizers Unscented, Arm & Hammer UltraMax Unscented, Secret Clear Gel Outlast Unscented, , Mitchum Men's Advance Unscented; Mitchum Women's Advanced Unscented; Mitchum Men's Clinical Unscented; Mitchum Women's Clinical Unscented, Mitchum SmartSolid Clinical Performance  Unscented, Dry Idea Advanced Dry Unscented and/or Ban Unscented Invisible Solid within the United States, not for resale or assignment.

Excluded from the Class are (a) the Defendants, including any entity in which the Defendants have a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Defendants' Products; and (c) the Judge to whom this case is assigned.

79.     **Numerosity/Impracticability of Joinder:** The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

80.     **Commonality and Predominance:** There are common questions of law and fact which predominate over any questions affecting only individual

members of the Class.  These common legal and factual questions, include, but are not limited to the following:

a.      whether the Defendants engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, labeling and sale of their Products;

b.      whether Defendant's acts and omissions violated the CFA;

c.      whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiff and the Class regarding the marketing, promotion, advertising, labeling and sale of their Products;

d.      whether the Defendants' false and misleading statements of fact and concealment of material facts regarding their Products were intended to deceive the public;

e.      whether, as a result of Defendants' misconduct, Plaintiff and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief; and

f.      whether the members of the Class have sustained ascertainable loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof.

81.      **Typicality:**  The representative Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent. Plaintiffs and all Class members have been injured by the same wrongful practices in which the Defendants have engaged.  Plaintiff's claims arise from the same practices and

course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

82.    **Adequacy**:  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained Class counsel who is experienced and qualified in prosecuting class actions.  Neither Plaintiff nor her attorney has any interests which are contrary to or conflicting with the Class.

83.    **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from the Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, the Defendants have acted or refused to act on grounds generally applicable to the Class and, as such,

final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

84. Plaintiff will not have any difficulty in managing this litigation as a class action.

## **FIRST COUNT**

### **Violation of the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 *et seq*.)**

### **(Asserted on Behalf of Plaintiff and the Class Against All Defendants)**

85. Plaintiff and the Class repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

86. Plaintiff and other members of the Class and Defendants are "persons" within the meaning of the CFA.

87. Plaintiff and other members of the Class are "consumers" within the meaning of the CFA.

88. The Defendants' Products are "merchandise" within the meaning of the CFA.

89. At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

90. The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

91. Defendants have engaged in deceptive practices in the sale of their Products because Defendants knew that it had purposely marketed and sold the

Products in a manner that made Plaintiff and other reasonable consumers believe that the Products were unscented.

92.     Defendants have engaged in deceptive practices in the sale of the Products because the Defendants knew that the Products have a detectible scent.

93.     Similarly, the Defendants also failed to disclose material facts regarding the Products to Plaintiffs and members of the Class -- namely, that the Products had a detectible scent.

94.     The Defendants intended that Plaintiff and the other members of the Class rely on these acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Products.

95.     The false and misleading representations were intended to, and likely to, deceive a reasonable consumer.

96.     The misrepresentations and omissions are material to the reasonable consumer, and are facts that a reasonable consumer would consider important in deciding whether to purchase the Products.

97.     Defendant's representations and omissions were, and are, material to reasonable consumers, including Plaintiff, in connection with their respective decisions to purchase the Products.

98.     Had the Defendants not engaged in false and misleading advertising regarding the Products, Plaintiffs and other members of the Class would not have purchased the Products.

99.   Had the Defendants disclosed all material information regarding the Products to Plaintiff and other members of the Class, they would not have purchased the Products.

100.   The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Products and Plaintiff and the Class are entitled to recover such damages, together with appropriate penalties, including, but not limited to, treble damages, attorneys' fees and costs of suit.

101.   Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein. because, *inter alia*:

a.   at least one Defendant controlled and directed its nationwide sales operations and support operations from New Jersey;

b.   at least one Defendant's marketing operations and decisions, including the decisions as to how to advertise, promote and sell the Products, were made in New Jersey, and at least one Defendant's sales and marketing personnel are all based in New Jersey;

c.   at least one Defendant conducted all product review and analysis in New Jersey;

d.   at least one Defendant's principal places of business is located in New Jersey and the significant employees of at least one of the Defendants are based in New Jersey;

f.      the majority of relevant documents maintained by at least one of the

Defendants are located in New Jersey; and

g.      the facts and circumstances of this case bestow numerous contacts

with in the State of New Jersey so as to create a state interest in applying the

CFA to the Defendants, thereby making application of New Jersey law to the

entire Class appropriate.

## SECOND COUNT

## Violation of the Consumer Fraud Acts of States Other Than New Jersey

### (Asserted, in the Alternative, on Behalf of Plaintiff and the Class Against All Defendants)

102.    Plaintiff and the Class repeats and realleges the allegations of the

preceding paragraphs as if fully set forth herein.

103.    The Defendants violated statutes enacted in each of the fifty states and

the District of Columbia that are designed to protect consumers against unfair,

deceptive, fraudulent and unconscionable trade and business practices and false

advertising.  These statutes are:

a.      Alabama Deceptive Trade Practices Act, Ala. Statutes Ann. §§ 8-19 -1, *et seq*.;

b.      Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq*.;

c.      Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq*.;

d.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101 *et seq*.;

e.      California Consumer Legal Remedies Act. Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.;

f.      Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq*.;

g.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.;

h.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq*.;

i.      District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq*.;

j.      Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.;

k.      Georgia Fair Business Practices Act, § 10-1-390, *et seq*.;

l.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq*. and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq*.;

m.      Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq*.;

n.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq*.;

o.      Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq*.;

p.      Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq*.;

q.      Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50 626, *et seq*.;

r.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq*. and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann. §§ 365.020, *et seq*.;

s.      Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq*.;

t.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*. and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10 § 1211, *et seq*.;

u.      Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq*.;

v.      Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws Ch. 93A;

w.      Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

x.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq*. and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*.;

y.      Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;

z.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

aa.    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101 *et seq.*;

bb.    Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, et seq. and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.*;

cc.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 *et seq.*;

dd.    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1 *et seq.*;

ee.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 *et seq.*;

ff.    New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 *et seq.*;

gg.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01 *et seq.*;

hh.    North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes, §§ 75-1 *et seq.*;

ii.    Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. §§ 4165.01 *et seq.*;

jj.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751 *et seq.*;

kk.    Oregon Unfair Trade Practices Act, Rev. Stat. § 646.605 *et seq.*;

ll.    Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1 *et seq.*;

mm.    Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et seq.*;

nn.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10 *et seq.*;

oo.    South Dakota's Deceptive Trade Practices and Consumer Protection La, S.D. Codified Laws §§ 37 24 1, *et seq.*;

pp.    Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101 *et seq.*;

qq.    Texas Deceptive Trade Practices-Consumer Protection Act, Texas Stat. Ann. §§ 17.41, *et seq.*;

rr.    Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.*;

ss.    Vermont Consumer Fraud Act, Vt. Stat. Ann. Title 9 § 2451 *et seq.*;

tt.    Virginia Consumer Protection Act, Virginia Code Ann. §§ 59.1-196, *et seq.*;

uu.   Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

vv.   West Virginia Consumer Credit and Protection Act, Wis. Stat. §§ 100.18, *et seq.*;

ww.   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*;

xx.   Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§ 40-12-10, *et seq.*;

104.   Defendants have engaged in deceptive practices in the sale of their Products because Defendants knew that it had purposely marketed and sold the Products in a manner that made Plaintiff and other reasonable consumers believe that the Products were unscented.

105.   Defendants have engaged in deceptive practices in the sale of the Products because the Defendants knew that the Products have a detectible scent.

106.   Similarly, the Defendants also failed to disclose material facts regarding the Products to Plaintiffs and members of the Class -- namely, that the Products had a detectible scent.

107.   The Defendants intended that Plaintiff and the other members of the Class rely on these acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Products.

108.   The false and misleading representations were intended to, and likely to, deceive a reasonable consumer.

109.   The misrepresentations and omissions are material to the reasonable consumer, and are facts that a reasonable consumer would consider important in deciding whether to purchase the Products.

110.    Defendant's representations and omissions were, and are, material to reasonable consumers, including Plaintiff, in connection with their respective decisions to purchase the Products.

111.    Had the Defendants not engaged in false and misleading advertising regarding the Products, Plaintiffs and other members of the Class would not have purchased the Products.

112.    Had the Defendants disclosed all material information regarding the Products to Plaintiff and other members of the Class, they would not have purchased the Products.

113.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Products and Plaintiff and the Class are entitled to recover such damages, together with appropriate penalties, including, but not limited to, treble damages, attorneys' fees and costs of suit.

**THIRD COUNT**

**INTENTIONAL MISREPRESENTATION**

**(Asserted on Behalf of Plaintiff and the Class Against All Defendants)**

114.    Plaintiff and the Class repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

115.    Defendants, directly or through their agents and employees, made false representations, concealments and nondisclosures to Plaintiffs and members of the Class.

40

116.    Defendants as the manufacturer, packager, labeler and initial seller of Products purchased by the Plaintiff and the Class had a duty to disclose the true nature of the Products and not sell them as "unscented" when they were, in fact, scented.

117.    Defendants had exclusive knowledge of material facts not known or reasonably accessible to Plaintiff and the Class.

118.    The Defendants actively concealed material facts from Plaintiff and the Class and made representations that are misleading.

119.    The Defendants failure to disclosure information concerning their Products to Plaintiff and the Class that they had a duty to disclose constitutes a material misrepresentation and a materially misleading omission which misled Plaintiff and the Class who relief upon the Defendants' representations that the Products were unscented.

120.    Plaintiff and the Class reasonably relied on the Defendants' representations that their Products were "unscented."

121.    In making their representations to Plaintiff and the Class that the Products were "unscented", the Defendants have failed to fulfill their duties to disclose the material fact that the Products were, in fact, scented.

122.    In making the representation that the Products were "unscented", the Defendants knew or reasonably should have known that the representation was not true.

123.    The Defendants made the representation that the Products were "unscented" to induce Plaintiff and the Class to purchase the Products.

124.    Had Plaintiff and the Class known that the Products were scented, they would not have purchased the Products.

125.    Plaintiff and the Class relied upon the Defendants' representations that the Products were "unscented."

126.    As a direct and proximate result of the Defendants' wrongful actions, Plaintiff and the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on all of those monies, all in an amount to be determined at the time of trial.

**FOURTH COUNT**

**NEGLIGENT MISREPRESENTATION**

**(Asserted on Behalf of Plaintiff and the Class Against All Defendants)**

127.    Plaintiff and the Class repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

128.    Defendants, directly or through their agents and employees, made false representations, concealments and nondisclosures to Plaintiffs and members of the Class.

129.    Defendants as the manufacturer, packager, labeler and initial seller of Products purchased by the Plaintiff and the Class had a duty to disclose the true nature of the Products and not sell them as "unscented" when they were, in fact, scented.

130.    Defendants had exclusive knowledge of material facts not known or reasonably accessible to Plaintiff and the Class.

42

131.    The Defendants failure to disclosure information concerning their Products to Plaintiff and the Class that they had a duty to disclose constitutes a material misrepresentation and a materially misleading omission which misled Plaintiff and the Class who relief upon the Defendants' representations that the Products were unscented.

132.    Plaintiff and the Class reasonably relied on the Defendants' representations that their Products were "unscented."

133.    In making their representations to Plaintiff and the Class that the Products were "unscented", the Defendants have failed to fulfill their duties to disclose the material fact that the Products were, in fact, scented.

134.    In making the representation that the Products were "unscented", the Defendants reasonably should have known that the representation was not true.

135.    The Defendants made the representation that the Products were "unscented" to induce Plaintiff and the Class to purchase the Products.

136.    Had Plaintiff and the Class known that the Products were scented, they would not have purchased the Products.

137.    Plaintiff and the Class relied upon the Defendants' representations that the Products were "unscented."

138.    As a direct and proximate result of the Defendants' wrongful actions, Plaintiff and the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on all of those monies, all in an amount to be determined at the time of trial.

**FOURTH COUNT**

**UNJUST ENRICHMENT**

**(Asserted on Behalf of Plaintiff and the Class Against All Defendants)**

139.     Plaintiff and the Class repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

140.     As a result of the Defendants' deceptive, fraudulent and misleading labeling, packaging and advertising, marketing and sales of the Products, the Defendants were enriched at the expense of Plaintiff and the Class through the payment of the purchase price for the Products.

141.     Plaintiff and the Class conferred a benefit on the Defendants through their purchase of the Products and the Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefits conferred to them.

142.     The Defendants will be unjustly enriched if they are allowed to retain that benefit in the form of payment for the Products by Plaintiff and each member of the Class.

143.     To prevent the unjust enrichment of the Defendants, Plaintiff and each member of the Class is entitled to an amount equal to the amount they paid for the Defendants' purportedly "unscented" Products.

144.     Under the circumstances, it would be against equity and good conscience to permit the Defendants to retain their benefits they received from Plaintiff and the Class when it was intent and belief of Plaintiff and all members of the Class that they were purchasing unscented Products from the Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment against Defendants granting the following relief:

A.      An order certifying this case as a class action and appointing Plaintiff as Class representative and Plaintiff's counsel to represent the Class;

B.      Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C.      All recoverable compensatory and other damages sustained by Plaintiff and the Class;

D .      Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

E.      An order (1) requiring Defendants to immediately cease their wrongful conduct as set forth above; (2) enjoining Defendants from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering Defendants to engage in a corrective notice campaign; and (4) requiring Defendants to pay to Plaintiff and all members of the Class the amounts paid for the Products;

F.      Statutory pre-judgment and post-judgment interest on any amounts;

G.      Payment of reasonable attorneys' fees and costs; and

H.      Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action so triable.

Respectfully submitted,

/s/ Mark L. Rhoades
Mark L. Rhoades, Esquire
New Jersey Attorney I.D. No. 024801997
**RHOADES LLC**
One Liberty Place, 36th Floor
1650 Market Street
Philadelphia, PA  19103
215-496-9002 telephone
rhoades@rhoadesllc.com

**Counsel for Plaintiff, Melissa A. Fogarty
and the Class**

Dated:  November 12, 2014