Wanda L. Ellert
PROSKAUER ROSE LLP
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3285
Fax: (973) 274-3299
wellert@proskauer.com

Richard M. Goldstein *
Lawrence I. Weinstein *
Baldassare Vinti *
Andrew S. Wellin *
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
* *Pro Hac Vice Application Pending*

*Attorneys for Defendant*
*Church & Dwight Co., Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MELISSA FOGARTY, On Behalf of Herself and
All Others Similarly Situated,

                         Plaintiff,

    -against-

CHURCH & DWIGHT, INC.; THE PROCTOR &
GAMBLE COMPANY, INC.; REVLON, INC.;
THE DIAL CORPORATION; and HENKEL
CORPORATION,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civ. Action No. 3:14-CV-07086 (FLW)
(DEA)

**Motion Date:** March 16, 2015

*Document Electronically Filed*

**Oral Argument Requested**

### DEFENDANT CHURCH & DWIGHT CO., INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................iii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ....................................................................................1

ARGUMENT .........................................................................................................4

I.  Plaintiff's NJCFA, Intentional and Negligent Misrepresentation and
    Unjust Enrichment Claims Fail to State a Claim for Relief Under Rule
    12(b)(6) ......................................................................................................4

    A.  The Controlling Legal Standards. ...............................................4

    B.  Plaintiff's NJCFA Claim Should Be Dismissed for Failure
        to State a Claim.............................................................................7

        1.  Plaintiff Has Failed Adequately To Plead An
            Ascertainable Loss ...........................................................7

        2.  Plaintiff Has Failed Adequately to Plead
            Unlawful Conduct.............................................................10

        3.  Plaintiff's Complaint Does Not Plead Facts Plausibly
            Establishing The Causation Element of the NJCFA.........13

    C.  Plaintiff Fails to State a Claim for Intentional and
        Negligent Misrepresentation Because Plaintiff Has Not
        Alleged A Particularized Economic Loss ....................................14

    D.  Plaintiff Fails to State a Claim for Unjust Enrichment
        Because She Did Not Confer a Direct Benefit on Church &
        Dwight and Impermissibly Alleges a Tort-Based Unjust
        Enrichment Claim ........................................................................15

II. Plaintiff's Claims All Must Be Dismissed for Lack of Standing Under
    Rule 12(b)(1)..............................................................................................16

    A.  The Controlling Legal Standard...................................................16

    B.  Plaintiff Lacks Standing to Invoke Other States' Consumer
        Fraud Statutes Because She is a New Jersey Resident Who

i

Allegedly Purchased the Products in New Jersey.......................................................17

C.  Plaintiff's NJCFA and Other New Jersey Claims Must Be
    Dismissed Because She Lacks Standing..................................................................18

CONCLUSION........................................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Am. Cyanamid Co. v. S.C. Johnson & Son, Inc.*,
  729 F. Supp. 1018 (D.N.J. 1989) ......................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................4, 5

*Balser v. The Hain Celestial Grp., Inc.*,
  2013 U.S. Dist. LEXIS 180220 (C.D. Cal. Dec. 18, 2013) ....................................12

*Barrows v. Chase Manhattan Mortg. Corp.*,
  465 F. Supp. 2d 347 (D.N.J. 2006) ..................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................4

*Bird v. First Alert, Inc.*,
  2014 U.S. Dist. LEXIS 176390 (N.D. Cal. Dec. 19, 2014)....................................11

*Bosland v. Warnock Dodge, Inc.*,
  197 N.J. 543 (2009) .................................................................................7, 13

*Chattin v. Cape May Greene, Inc.*,
  243 N.J. Super. 590 (App. Div. 1990),
  *aff'd*, 124 N.J. 520 (1991) ..........................................................................10

*Cooper v. Samsung Elecs. Am., Inc.*,
  2008 U.S. Dist. LEXIS 75810 (D.N.J. Sept. 30, 2008),
  *aff'd on other grounds*, 374 F. App'x 250 (3d Cir. 2010) ....................................15

*Dicuio v. Brother Int'l Corp.*,
  2012 U.S. Dist. LEXIS 112047 (D.N.J. Aug. 9, 2012)...........................................8

*Federman v. Bank of Am., N.A.*,
  2014 U.S. Dist. LEXIS 175565 (D.N.J. Dec. 16, 2014) .......................................17

*Food Scis. Corp. v. Nagler*,
  2010 U.S. Dist. LEXIS 112072 (D.N.J. Oct. 20, 2010).....................................4-5

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009).........................................................................5

*Franulovic v. Coca-Cola Co.*,
  2007 U.S. Dist. LEXIS 79732 (D.N.J. Oct. 25, 2007)..........................................................10

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007).............................................................................................6

*Gennari v. Weichert Co. Realtors*,
  148 N.J. 582 (1997) ......................................................................................................10

*Gupta v. Asha Enters., L.L.C.*,
  422 N.J. Super. 136 (App. Div. 2011) ...........................................................................10

*Hemy v. Perdue Farms, Inc.*,
  2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2011)...................................................12

*Hughes v. Panasonic Consumer Elecs. Co.*,
  2011 U.S. Dist. LEXIS 79504 (D.N.J. July 21, 2011).......................................................18

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)...........................................................................................7

*In re Cheerios Mktg. and Sales Practices Litig.*,
  2012 U.S. Dist. LEXIS 128325 (D.N.J. Sept. 10, 2012) .................................................13

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ..........................................................................9

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 142466 (D.N.J. Oct. 2, 2013)......................................................17

*In re Gerber Probiotic Sales Practices Litig.*,
  2014 U.S. Dist. LEXIS 94319 (D.N.J. July 11, 2014).......................................................9

*In re Magnesium Oxide Antitrust Litig.*,
  2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011).....................................................17

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012).............................................................................................16

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006).............................................................................................6

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
  2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 10, 2009) ...................................................11

*Kelly v. Cape Cod Potato Chip Co.*,
  2015 U.S. Dist. LEXIS 8988 (W.D. Mo. Jan. 27, 2015) .............................................11, 12

*Koronthaly v. L'Oreal USA, Inc.*,
  2008 U.S. Dist. LEXIS 59024 (D.N.J. July 29, 2008),
  *aff'd*, 374 F. App'x 257 (3d Cir. 2010) ...........................................................16, 18

*Lee v. Carter-Reed Co.*,
  203 N.J. 496 (2010) ...................................................................................8, 9

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................6, 7, 8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................16

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)...........................................................................13

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011) ....................................................5, 10, 14

*McGuire v. BMW of N. Am., LLC*,
  2014 U.S. Dist. LEXIS 77009 (D.N.J. June 6, 2014) ..............................15, 17

*Nelson v. Xacta 3000, Inc*,
  2010 U.S. Dist. LEXIS 47128 (D.N.J. May 12, 2010) ...................................8

*Pappalardo v. Combat Sports, Inc.*,
  2011 U.S. Dist. LEXIS 147902 (D.N.J. Dec. 23, 2011) ................................15

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
  998 F.2d 1192 (3d Cir. 1993)............................................................................6

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998)..............................................................................6

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010)..............................................................................5

*Smajlaj v. Campbell Soup Co.*,
  782 F. Supp. 2d 84 (D.N.J. 2011) .....................................................................7

*Snyder v. Farnam Cos., Inc.*,
  792 F. Supp. 2d 712 (D.N.J. 2011) ..................................................................15

*Solo v. Bed, Bath & Beyond, Inc.*,
  2007 U.S. Dist. LEXIS 31088 (D.N.J. Apr. 26, 2007) ............................7, 10

*Stewart v. Smart Balance, Inc.*,
  2012 U.S. Dist. LEXIS 138454 (D.N.J. Jun. 26, 2012).............................7, 8, 9

*Thiedemann v. Mercedes-Benz USA, LLC*,
    183 N.J. 234 (2005) .......................................................................................7, 8

*Travelers Indem. Co. v. Cephalon, Inc.*,
    32 F. Supp. 3d 538 (E.D. Pa. 2014) ...................................................................18

*Tristar Prods., Inc. v. SAS Grp., Inc.*,
    2009 U.S. Dist. LEXIS 94592 (D.N.J. Sept. 9, 2009) ...........................................6

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,
    473 F.3d 506 (3d Cir. 2007)................................................................................17

*Young v. Johnson & Johnson*,
    2012 U.S. Dist. LEXIS 55192 (D.N.J. Apr. 19, 2012),
    *aff'd*, 525 F. App'x 179 (3d Cir. 2013)..................................................................6

## OTHER AUTHORITIES

U.S. Food & Drug Admin., *Fragrances In Cosmetics* (Sept. 19, 2014), *available at* http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/ucm388821.htm .................................................................................................1, 2

## PRELIMINARY STATEMENT

In her Complaint, Plaintiff Melissa Fogarty asserts claims against several manufacturers of underarm deodorants, including Church & Dwight Co., Inc. (misidentified as Church & Dwight Inc., and referred to herein as "Church & Dwight"). Ms. Fogarty's claims include violations of the New Jersey Consumer Fraud Act ("NJCFA") and the consumer protection statutes of every other state and the District of Columbia, intentional and negligent misrepresentation and unjust enrichment. For the reasons that follow, Ms. Fogarty's claims against Church & Dwight should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1).

## STATEMENT OF FACTS

This case challenges the use of the word "Unscented" on the labels of numerous underarm deodorant products manufactured by several different competitors, including Church & Dwight, Procter & Gamble ("P&G"), Revlon and The Dial Corporation (together with its affiliate Henkel Corporation, "Dial"). Among the deodorants at issue in the Complaint are two Church & Dwight deodorant products, Arm & Hammer® Essentials™ Deodorant with Natural Deodorizers Unscented ("Essentials") and Arm & Hammer UltraMax™ Unscented ("UltraMax"). Those two Church & Dwight products are sometimes referred to as the "Products".

Underarm deodorants are regulated by the U.S. Food & Drug Administration ("FDA").[1] Each of the Defendants here identify certain of the versions of underarm deodorants they sell as "unscented." As the FDA fully recognizes, "unscented" does not mean or connote that a

---

[1] *See*, *e.g.*, U.S. Food & Drug Administration, *Fragrances in Cosmetics* (Sept. 19, 2014), *available at* http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/ucm388821.htm (last accessed Feb. 20, 2015).

deodorant has no detectable smell and that instead, "products labeled as 'unscented' *may contain fragrance ingredients*" used to mask other smells.[2]  *See Fragrances In Cosmetics* at

http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/
ucm388821.htm.

Although the Complaint does not say so explicitly, Plaintiff's personal definition of the word "unscented" as it relates to underarm deodorants is that a product so labeled should have no smell whatsoever.  Plaintiff claims that at some point prior to October 2014, she sought to purchase unscented deodorants for her family members. Complaint ("Compl.") ¶¶ 66-67.  She asserts that she first bought Mitchum Men's Advanced Unscented Deodorant ("Mitchum Men's"), made by Defendant Revlon, from an unspecified retailer at an unspecified time and that after purchasing Mitchum Men's, she "discovered that it had an unmistakable scent despite being labeled as 'unscented.'"  *Id.* ¶ 66.  She alleges that she was "[n]ot satisfied with her purchase of Mitchum Men's," and only then began searching for other unscented deodorants "in hopes of finding one unscented deodorant that was truly unscented."  *Id.* ¶¶ 66-67.

In October 2014, Plaintiff allegedly searched for deodorants on the website Drugstore.com that were "listed as unscented," reviewed photographs of the deodorants, and purchased all of the products at issue in the Complaint except Mitchum Men's, including the Church & Dwight Products, for unspecified prices.  *Id.* ¶¶ 67-68.  A consumer looking to purchase deodorants on the Drugstore.com website can click on a link to see information about each product, including a list of the ingredients identified on the Product label.  February 20, 2015 Declaration of Wanda L. Ellert ("Ellert Decl.") Ex. 3 at 3.  The Complaint does not

---

[2] In this Memorandum, all emphasis in quotations is supplied unless otherwise indicated.

mention whether or not Ms. Fogarty looked at the ingredient lists of any of the deodorant products she purchased from Drugstore.com prior to her purchases.

According to Plaintiff, after she received the deodorants she purchased from Drugstore.com, she determined that the Products were, in fact, "scented" – as she individually defines that term. Compl. ¶ 68. The Complaint asserts that "[b]ecause the Products were scented, Plaintiff could not use them for their intended purposes." *Id.* ¶ 69. As a result, Plaintiff Fogarty alleges that she "suffered an ascertainable loss in the amount of the purchase price" of each of the products she claims to have purchased. *Id.*

According to Plaintiff, Essentials has an "unmistakable citrus scent" and UltraMax has a "clean, fresh, powdery scent." *Id.* ¶¶ 27, 30. Lumping together all of the products of the various Defendants at issue in the case, Plaintiff alleges that "[p]rior to their purchase of the Defendants' products, Plaintiff and the members of the [alleged] Class were unable to determine that the Products had a scent" because the "packaging included foil and plastic barriers attached to the top of the product with adhesive or form fitting plastic caps."[3] *Id.* ¶ 24. That allegation is demonstrably untrue with respect to the two Church & Dwight Products at issue. Neither Essentials nor Ultra Max has either a foil or plastic barrier that prevents a consumer from smelling the deodorant before purchase. The allegation is also strange for Plaintiff to make, since she concedes she brought all the products at issue, except for Mitchum Men's, through an online website.

Copies of the Essentials and UltraMax labels are Exhibits 1 and 2 to the attached Ellert Declaration. *See* Ellert Decl. Exs. 1 and 2. In addition to the statement that Essentials is

---

[3] Despite the broad language of Complaint ¶ 24, Plaintiff appears elsewhere to acknowledge that the Complaint's references to a foil or plastic barrier preventing a prospective purchaser from being able to smell the deodorant prior to purchase do not apply to Essentials and UltraMax. *Compare* Compl. ¶¶ 35, 39, 43, 47, 51, 54, 58, *with* Compl. ¶¶ 26-31.

"unscented," the Essentials label identifies Essentials as a "deodorant." *See* Ellert Decl. Ex. 1. The Essentials label also discloses that it contains, *inter alia*, the ingredients Citrus Aurantium Dulcis (Orange) Peel Oil, Anthemis Nobilis (Chamomile) Flower Oil, Coriandrum Sativum (Coriander) Fruit Oil, and Pelargonium Graveolens (Geranium) Flower Oil. *Id.* Similarly, the UltraMax label states it is "unscented" and identifies UltraMax as a "deodorant" and an "antiperspirant." Ellert Decl. Ex. 2. The UltraMax label also discloses that it contains, *inter alia*, the ingredient Etyhylene Brassylate. *Id.*

The Complaint, filed on November 12, 2014, alleges as to each Defendant, including Church & Dwight, that the Products' labels violate the NJCFA (First Count) and the consumer fraud laws of all other states and the District of Columbia (Second Count), that Defendants intentionally misrepresented their products as "unscented" (Third Count), negligently misrepresented their products as "unscented" (Fourth Count) and were unjustly enriched as a result of their misrepresentations (Fifth Count). The Complaint is styled as a class action and contends that New Jersey law applies to the rights of Plaintiff and all members of the putative class. *See* Compl. ¶¶ 71-76.

## ARGUMENT

**I.     Plaintiff's NJCFA, Intentional and Negligent Misrepresentation and Unjust Enrichment Claims Fail to State a Claim for Relief Under Rule 12(b)(6)**

### A.     The Controlling Legal Standards

To survive a Rule 12(b)(6) motion alleging that a Complaint does not satisfy Rule 8(a), a plaintiff must "state a claim to relief that is plausible on its face" by alleging *non-conclusory* "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Food Scis. Corp. v. Nagler*, 2010

4

U.S. Dist. LEXIS 112072, at *8 (D.N.J. Oct. 20, 2010) (noting that dismissal is appropriate when allegations are "so implausible" that no reasonable fact-finder could credit them).

When reviewing a motion to dismiss, courts are to accept all *non-conclusory* factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *E.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 701 (D.N.J. 2011). As the U.S. Supreme Court and judges of this Court have made clear, only well-pleaded allegations of fact are to be presumed true on a motion to dismiss; conclusory allegations do not get the benefit of that presumption. *See, e.g., Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including legal conclusions "couched as…factual allegation[s]").

Determining whether a Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations and citation omitted).

To help guide a court's evaluation of a motion to dismiss, the Third Circuit has established a three-part test:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation and

citations omitted).  *Accord*, *Young v. Johnson & Johnson*, 2012 U.S. Dist. LEXIS 55192, at *5 (D.N.J. Apr. 19, 2012), *aff'd*, 525 F. App'x 179 (3d Cir. 2013).

On a Rule 12(b)(6) motion, a court may consider the exhibits attached to the complaint, matters of public record, and indisputably authentic documents if the plaintiff's claims are based on such documents.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Where, as here, a claim is based on allegations about the content and meaning of labeling or other advertising, the labels themselves are part of the record, even if not attached to the complaint.  *E.g., Tristar Prods., Inc. v. SAS Grp., Inc.*, 2009 U.S. Dist. LEXIS 94592, at *11-12 (D.N.J. Sept. 9, 2009); *see Am. Cyanamid Co. v. S.C. Johnson & Son, Inc.,* 729 F. Supp. 1018, 1021-22 (D.N.J. 1989).

To withstand a Rule 12(b)(6) motion to dismiss a Complaint alleging a violation of the NJCFA, a plaintiff must also satisfy the heightened pleading standard of Rule 9(b).  *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (Wolfson, J.).  To meet this heightened pleading standard, a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).  *Accord*, *Lieberson*, 865 F. Supp. 2d at 538.

Particularity refers to the "'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted).  "A complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff."  *Lieberson*, 865 F. Supp. 2d at 538; *see also Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir. 1998).  "Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of

protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

**B.    Plaintiff's NJCFA Claim Should Be Dismissed for Failure to State a Claim**

**1.    Plaintiff Has Failed Adequately To Plead An Ascertainable Loss**

The three elements of a NJCFA claim are: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).

Although the NJCFA does not define "ascertainable loss," New Jersey courts recognize that, even at the pleading stage, plaintiffs must quantify their injury. *Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454, at *28 (D.N.J. Jun. 26, 2012); *Lieberson*, 865 F. Supp. 2d at 541-42 (holding that plaintiff's failure to quantify ascertainable loss required dismissal of NJCFA claim); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 101 (D.N.J. 2011) (same); *Solo v. Bed Bath & Beyond, Inc.*, 2007 U.S. Dist. LEXIS 31088, at *10-11 (D.N.J. Apr. 26, 2007) (same).  It is well-established that this element of a NJCFA claim must meet the heightened pleading requirements of Fed R. Civ. P. 9(b).  *Lieberson,* 865 F. Supp. 2d at 538.

To demonstrate an ascertainable loss, the plaintiff must establish an "actual loss" that is "quantifiable or otherwise  measurable," as opposed to "hypothetical", "illusory" or "speculative."  *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 238 (2005).  There are two methods by which a plaintiff may prove loss: (i) the out-of pocket rule, which applies when a plaintiff can demonstrate that she paid a specific sum of money for which she is now out-of-pocket; or (ii) the benefit-of-the bargain rule, which applies when a plaintiff cannot demonstrate an out-of-pocket loss, but seeks to recover the difference in value between the object she actually

purchased and the object she reasonably believed she was purchasing, which is achieved by quantifying the price difference between the product promised and the product received. *See, e.g., id.*, 183 N.J. at 248; *Dicuio v. Brother Int'l Corp.*, 2012 U.S. Dist. LEXIS 112047, at *18-20 (D.N.J. Aug. 9, 2012) (Wolfson, J); *Lieberson*, 865 F. Supp. 2d at 541.

The only theory of ascertainable loss alleged in Ms. Fogarty's Complaint is the "out of pocket" theory. *See* Compl. ¶ 69 (seeking recovery "in the amount of the purchase price for the Defendants' Products" because she allegedly could not use them for their "intended purposes" as "unscented deodorants"). However, the out of pocket theory is only available when the product at issue is completely ineffective or worthless. *Lee v. Carter-Reed Co.*, 203 N.J. 496, 529 (2010); *In re Cheerios Mktg. and Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 128325, at *29 (D.N.J. Sept. 10, 2012); *Nelson v. Xacta 3000, Inc*, 2010 U.S. Dist. LEXIS 47128, at *17-18 (D.N.J. May 12, 2010).

Critically, Fogarty's Complaint does not allege – nor can it – that the Church & Dwight Products are ineffective for their intended purpose, which is to minimize underarm odor, or that all the advertising claims about the Products are baseless. Consequently, the Complaint fails to properly quantify Plaintiff's ascertainable loss under New Jersey law and dismissal is appropriate.

*Stewart*, 2012 U.S. Dist. LEXIS 138454, is directly on point. In *Stewart*, plaintiffs alleged that defendants "misleadingly, and purposefully misrepresent on their milk cartons, on their website, and in their promotions that [their] enhanced milks are 'fat free' when in fact they contain 1 gram of fat per serving and 8 grams of fat per container." *Id.* at *2-3. Like Plaintiff Fogarty, the *Stewart* plaintiffs alleged that they had suffered an out of pocket loss equal to the purchase price of the purportedly misrepresented milk because they sought to purchase milk that

was, in fact, fat free. *Id.* at \*29. Rejecting plaintiffs' proposed quantification of ascertainable loss, the *Stewart* Court held that the out of pocket theory was inapplicable because "[p]laintiffs do not allege that 'all of the representations about the product are baseless.'" *Id.* at \*30 (quoting *Lee*, 203 N.J. at 529). *Accord*, *In re Gerber Probiotic Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 94319, at \*7 (D.N.J. July 11, 2014) (Plaintiff not entitled to out of pocket cost "because the substance of the claim is that Plaintiffs would have bought different formula or cereal products if they had known that Defendants' probiotic products did not provide immunity benefits, [and therefore] the retail price does not reflect the amount of loss sustained.") Similarly, in *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1107 n.55 (C.D. Cal. 2012), the Court explained that under the NJCFA, plaintiffs' ascertainable loss was not the full purchase price of cooking oils allegedly misrepresented as "100% natural" because "plaintiffs do not allege that the Wesson Oils had no value, or that they did not serve their fundamental purpose as cooking oils." *Id.* at 1107 n.55.

As in *Stewart*, the Complaint fails to quantify Plaintiff's purported ascertainable loss. First, the Complaint does not even allege the amount Ms. Fogarty paid either for Essentials or UltraMax. Moreover, and even more importantly, Plaintiff's claim of entitlement to the "amount of the purchase price" of the Church & Dwight Products is not supported by Plaintiff's allegations. Under the out of pocket theory, Plaintiff's ascertainable loss only would be equal to the purchase price of the Products if *all* of the Products' claimed benefits were baseless or the Products were *entirely* ineffective or worthless. Although Plaintiff asserts that Church & Dwight falsely stated that Essentials and UltraMax are "unscented," both Products' labels indicate that the Products are "deodorant[s]" and the UltraMax label adds that it is also an "antiperspirant." Ellert Decl. Exs. 1 and 2. Plaintiff does not dispute the truth of these statements, and the

Complaint does not allege that the Products are ineffective as deodorants, the Products are worthless, or UltraMax is ineffective as an antiperspirant.  Accordingly, the Complaint's quantification of ascertainable loss as the Products' purchase price, under the out of pocket approach, is incorrect and dismissal is required.[4]

### 2.    Plaintiff Has Failed Adequately to Plead Unlawful Conduct

Whether an advertisement is sufficiently alleged to be false or deceptive within the meaning of the NJCFA requires the consideration of the advertisement in its entirety and in context.  *Chattin v. Cape May Greene, Inc.*, 243 N.J. Super. 590, 608 (App. Div. 1990), *aff'd*, 124 N.J. 520 (1991).  Even if, solely for argument's sake, it would have been reasonable for Ms. Fogarty to assume that the term "unscented" – standing alone and devoid of context – equated to "without any smell", she could not reasonably have taken away that message from the Essentials Package (or from the ingredients link to Essentials in Drugstore.com if she chose to look at it, as one would expect from someone who, according to the Complaint (¶¶ 66-67), was disappointed to learn that another manufacturer's "Unscented" deodorant had a noticeable smell).

Essentials' use of the term "unscented" could not possibly have been deceptive in context to a reasonable person, because the ingredient listing on the Product's label identifies several ingredients which, according to the Complaint's own allegations (see ¶¶ 27-28), give Essentials its "unmistakable citrus scent", namely Citrus Aurantium Dulcis (Orange) Peel Oil, Anthemis

---

[4] Fogarty's failure to plead an ascertainable loss demonstrates that she solely seeks compensation for her unmet expectations.  "Dissatisfaction with a product, however, is not a quantifiable loss that can be remedied under the NJCFA."  *Mason*, 774 F. Supp. 2d at 704; *Franulovic v. Coca-Cola Co.*, 2007 U.S. Dist. LEXIS 79732, at *23-24 (D.N.J. Oct. 25, 2007); *Solo*, 2007 U.S. Dist. LEXIS 31088, at *10; *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 612-13 (1997) ("Absent a clear expression of legislative intent…we are reluctant to read the Act to encompass non-economic losses"); *Gupta v. Asha Enters., L.L.C.*, 422 N.J. Super. 136, 149 (App. Div. 2011) ("what [religious vegetarians who were served meat] are seeking is the cost of cure for an alleged spiritual injury that cannot be categorized as either a loss of moneys or property").

Nobilis (Chamomile) Flower Oil, Coriandrum Sativum (Coriander) Fruit Oil, and Pelargonium

Graveolens (Geranium) Flower Oil.  *See* Ellert Decl. Ex. 1.  Any contention that a reasonable

consumer searching for a deodorant without any smell would not bother to look at the package

label's ingredient list before purchasing the deodorant is totally implausible.  Because the

Essentials label discloses the presence of the precise ingredients that Plaintiff alleges cause it to

emit a scent, reasonable consumers cannot be misled into believing that Essentials is devoid of

any smell whatsoever.[5]  *See, e.g., Kelly v. Cape Cod Potato Chip Co.*, 2015 U.S. Dist. LEXIS

8988, at *16 (W.D. Mo. Jan. 27, 2015) ("Plaintiff's assertion that she was deceived by

Defendants' labeling is contradicted by the full disclosure of the challenged ingredients by

Defendants.  Further, if Plaintiff wished to avoid products containing the challenged ingredients,

Defendants provided her with all the information she needed to do so. Thus, the Court finds that

Defendants' labeling of the Chips is not deceptive or misleading with regards to the ingredients

contained therein").

   In all events, Plaintiff's personal definition of "unscented" as completely lacking any

discernable smell is implausible as it applies to deodorants.  As the FDA has recognized,

cosmetic products labeled as "unscented" routinely contain ingredients that contain some

pleasant smell or odor.  Simply stated, while the Complaint may plead sufficient facts to suggest

---

[5] For this reason, Plaintiff's claim that "Defendants also failed to disclose material facts regarding the Products to Plaintiffs [sic] and members of the class – namely, that the Products had a detectible scent" is insufficient.  Compl. ¶ 93. There is no actionable "concealment" under the NJCFA because the label discloses the presence of the challenged ingredients and Plaintiff does not allege facts showing that such disclosure was inadequate.  *See Bird v. First Alert, Inc.*, 2014 U.S. Dist. LEXIS 176390, at *17-18 (N.D. Cal. Dec. 19, 2014) (plaintiff failed to state fraudulent omission claim under California consumer fraud statute because products included disclaimer and complaint failed to "allege any facts showing that the disclosures were inadequate"); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 U.S. Dist. LEXIS 82833, at *35 (D.N.J. Sept. 10, 2009) (alleged omissions failed to state NJCFA claim; "[i]n order to intend that others rely on the concealment of a fact, the fact must, of course, actually be *concealed*").

that Plaintiff Fogarty **subjectively** believed, before she bought Revlon's Mitchum product, that an "unscented" deodorant contains no smell, there is a big gap between her individual belief and what the NJCFA requires, which is that the belief be reasonable among prospective purchasers generally. *See*, *e.g*., *Kelly*, 2015 U.S. Dist. LEXIS 8988, at *10-11; *Balser v. The Hain Celestial Grp., Inc*., 2013 U.S. Dist. LEXIS 180220, at *2-3 (C.D. Cal. Dec. 18, 2013) (dismissing consumer fraud claim where plaintiff failed to allege plausible definition of challenged claim as applied to products at issue).

In this regard, *Hemy v. Perdue Farms, Inc*., 2011 U.S. Dist. LEXIS 137923 (D.N.J. Nov. 30, 2011) (Wolfson, J.) is analogous. There, this Court dismissed the NJCFA claim because a reasonable consumer could not understand the statement "humanely raised" to mean that chickens were humanely slaughtered. As explained by this Court, "Plaintiffs are attempting to allege [] that the 'Humanely Raised' label is misleading because reasonable consumers would believe that a company that humanely raises its chickens also humanely slaughters its chickens. However, Plaintiffs have not plead any facts from which the Court could infer that the 'Humanely Raised' label reasonably fosters such a belief." *Id.* at *52. Here, like *Hemy*, Plaintiff Fogarty's subjective belief that the term "unscented" necessarily means "fragrance free" or an absence of scent is unreasonable because she has not pled any facts from which her belief can be inferred. Indeed, although the Complaint refers to the dictionary definition of "scented" (¶ 59) in support of her understanding of the term "unscented," Plaintiff does not allege that she relied on this definition when purchasing the Products. Accordingly, as a matter of law, Plaintiff has failed to allege unlawful conduct under the NJCFA.

### 3. Plaintiff's Complaint Does Not Plead Facts Plausibly Establishing The Causation Element of the NJCFA

Causation is a required element of an NJCFA claim. The NJCFA requires plaintiffs to allege a plausible causal relationship between the alleged unlawful conduct complained of and the plaintiff's ascertainable loss. *Bosland v. Warnock Dodge*, 197 N.J. 543, 557 (2009). Although a NJCFA plaintiff need not establish reliance, the Third Circuit has made clear that when a plaintiff knows the truth behind purported unlawful conduct, the plaintiff cannot succeed under the NJCFA because the unlawful act cannot be said to have caused an ascertainable loss. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 609 (3d Cir. 2012); *see also Cheerios*, 2012 U.S. Dist. LEXIS 128325, at *30-31 (holding plaintiffs purported out of pocket ascertainable loss was not caused by an allegedly false product claim when plaintiffs knew that the claim was not true).

Here, Plaintiff claims first to have purchased Mitchum Men's, at some undisclosed location and time before she purchased any of the other deodorants at issue, including Church & Dwight's Products. Compl. ¶¶ 66-67. She "discovered that it had an unmistakable scent despite being labeled as 'unscented.'" *Id*. ¶ 66. Far from believing that Mitchum Men's was a rogue product at odds with industry accepted practice, Ms. Fogarty, in her own words, "purchased all of the Defendants' Products **in the hopes of finding one unscented deodorant that was truly unscented**." *Id.* ¶ 67. Given Plaintiff's allegations, the only **plausible** construction that can be given to Paragraph 67 is that, despite her personal belief about what "unscented" should mean, she knew at least one deodorant manufacturer, Revlon, did not use her definition of "unscented" and believed Revlon's practice to be sufficiently widespread she felt the need to buy **eight** additional deodorants from multiple manufacturers in "the hopes of finding one" deodorant that had no smell. Thus, Ms. Fogarty's own Complaint negates any plausible inference that when she bought Church & Dwight's Products and the other deodorants besides Mitchem Men's, she did

so in the belief that they had no smell.  Accordingly, Ms. Fogarty cannot demonstrate that the term "Unscented" on the label of the Church & Dwight Products was the cause of her purported ascertainable loss.

### C. Plaintiff Fails to State a Claim for Intentional and Negligent Misrepresentation Because Plaintiff Has Not Alleged A Particularized Economic Loss

The Complaint's intentional and negligent misrepresentation claims fail for the same reason as Plaintiff's NJCFA claim – the Complaint does not allege an economic loss.  Under New Jersey law, economic loss is a required element of both intentional and negligent misrepresentation.  *Mason,* 774 F. Supp. 2d at 704.  Like the NJCFA, the torts of intentional and negligent misrepresentation sound in fraud; consequently, a plaintiff's alleged economic loss must be plead with particularity pursuant to Rule 9(b).  *See id.* at 705.  In instances where a Complaint fails to quuantify a plaintiff's alleged ascertainable loss under the NJCFA and relies on identical allegations of loss in support of misrepresentation claims, dismissal is appropriate for failure to provide particularized details of economic loss.  *Id*.

Here, Plaintiff offers the same, non-particularized "measure" of economic loss in support of her misrepresentation claims as she does for her deficient NJCFA claim.  *See* Compl. ¶¶ 126, 138 ("Plaintiff and the Class have suffered and continue to suffer economic losses…including but not limited to the amount paid for the Products").  As demonstrated in Point I(B), *supra*, Plaintiff's alleged out of pocket theory of loss – the full price of the Products – does not properly quantify Plaintiff's ascertainable loss.  Thus, the Complaint's intentional and negligent misrepresentation claims must also be dismissed.

### D. Plaintiff Fails to State a Claim for Unjust Enrichment Because She Did Not Confer a Direct Benefit on Church & Dwight and Impermissibly Alleges a Tort-Based Unjust Enrichment Claim

Under New Jersey law, a claim for unjust enrichment requires the plaintiff to confer an improper benefit directly upon the unjustly enriched defendant. *Cooper v. Samsung Elecs. Am., Inc.*, 2008 U.S. Dist. LEXIS 75810, at *29 (D.N.J. Sept. 30, 2008), *aff'd on other grounds*, 374 F. App'x 250 (3d Cir. 2010); *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011). When a consumer purchase is made through a third-party retailer, there is no direct relationship between the consumer and the product's manufacturer. *Cooper*, 2008 U.S. Dist. LEXIS 75810, at *30; *Snyder*, 792 F. Supp. 2d at 724. Plaintiff allegedly purchased the Church & Dwight Products through the online, third-party retailer Drugstore.com. Compl. ¶ 67. Accordingly, dismissal of Plaintiff Fogarty's unjust enrichment claim is appropriate because Plaintiff did not directly confer a monetary benefit on Church & Dwight.

Moreover, Plaintiff Fogarty's unjust enrichment claim is not permissible as a tort claim either. Here, Plaintiff alleges she was deceived because the deodorant had a smell. *See* Compl. ¶ 140 (alleging that Defendant's unjust enrichment stemmed from their alleged "deceptive, fraudulent and misleading labeling, packaging and advertising, marketing and sales of the Products"). In other words, Ms. Fogarty alleges that Church & Dwight committed a tort. But "New Jersey does not recognize unjust enrichment as an independent tort cause of action." *McGuire v. BMW of N. Am., LLC,* 2014 U.S. Dist. LEXIS 77009, at *7 (D.N.J. June 6, 2014). Therefore, Fogarty's unjust enrichment claim is not actionable under New Jersey law and must be dismissed. *See Pappalardo v. Combat Sports, Inc*., 2011 U.S. Dist. LEXIS 147902, at *32-33 (D.N.J. Dec. 23, 2011) (dismissing plaintiff's unjust enrichment claim because it was "presented as a tort-based theory of recovery").

15

## II.    Plaintiff's Claims All Must Be Dismissed for Lack of Standing Under Rule 12(b)(1)

### A.    The Controlling Legal Standard

"A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  To withstand a Rule 12(b)(1) motion that a plaintiff lacks Article III standing, the plaintiff must demonstrate: (1) an injury-in-fact that is actual or imminent and concrete and particularized and not conjectural or hypothetical; (2) that is fairly traceable to the defendant's challenged conduct; and (3) is likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In evaluating a Rule 12(b)(1) motion, a court first must determine whether the motion presents a facial or factual attack.  *In re Schering-Plough*, 678 F.3d at 243.  A facial attack contests the adequacy of the plaintiff's standing as alleged in the complaint whereas a factual attack contests the plaintiff's standing in fact irrespective of the complaint's allegations.  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

In reviewing a facial challenge, the court may only consider the complaint's allegations and any documents referenced therein or attached thereto.  *In re Schering-Plough.*, 678 F.3d at 243.  Accordingly, the court applies the standard applicable to reviewing a motion to dismiss a complaint pursuant to Rule 12(b)(6).  *Id.*  Where the complaint fails to adequately allege injury-in-fact, dismissal of the complaint is required.  *See, e.g.*, *Koronthaly v. L'Oreal USA, Inc.*, 2008 U.S. Dist. LEXIS 59024, at *6 (D.N.J. July 25, 2008) (holding plaintiff's failure to adequately allege injury-in-fact required dismissal of NJCFA claim under Rule 12(b)(1)), *aff'd*, 374 F. App'x 257 (3d Cir. 2010).

16

**B.    Plaintiff Lacks Standing to Invoke Other States' Consumer Fraud Statutes Because She is a New Jersey Resident Who Allegedly Purchased the Products in New Jersey**

It is well-settled that a named plaintiff in a class action is required to establish Article III standing. *In re Magnesium Oxide Antitrust Litig.*, 2011 U.S. Dist. LEXIS 121373, at *24-25 (D.N.J. Oct. 20, 2011). "[C]ourts must initially review the standing of actual, not proposed plaintiffs to assert the claims in a class action complaint because the alternative would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union." *McGuire,* 2014 U.S. Dist. LEXIS 77009, at *17-18 (internal quotation and citation omitted); *see Federman v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 175565, at *32 (D.N.J. Dec. 16, 2014) (same); *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, 2013 U.S. Dist. LEXIS 142466, at *37 (D.N.J. Oct. 2, 2013) (same); *Magnesium Oxide*, 2011 U.S. Dist. LEXIS 121373, at *37-38 (same). Although the Complaint concedes that Plaintiff Fogarty is a New Jersey resident who purchased the Products in New Jersey (*see* Compl. ¶¶ 12, 21), Plaintiff seeks to avail herself of forty-nine other states' and the District of Columbia's consumer fraud statutes despite the fact that she does not claim to have suffered any injury in any of these locales. Beyond the enormous burden Plaintiff's cavalier pleading would place on Church & Dwight, not to mention this Court, Plaintiff's attempt to invoke the consumer fraud statutes of venues with which she has no connection is constitutionally impermissible. Accordingly, Plaintiff Fogarty's attempt to invoke these statutes must be dismissed.[6]

---

[6] Plaintiff's claims under the consumer fraud statutes of the other forty-nine states and the District of Columbia are also subject to dismissal under Rule 12(b)(6) and Rule 9(b) because Plaintiff does nothing more than list the statutes, without asserting any factual basis for asserting claims in those states. Plaintiff's failure to allege the statutory elements or facts permitting the

**C.    Plaintiff's NJCFA and Other New Jersey Claims Must Be Dismissed Because She Lacks Standing**

Because the Complaint fails to quantify Plaintiff Fogarty's purported ascertainable loss under the NJCFA, Plaintiff solely seeks relief based on her dissatisfaction with the Products.  For this reason too, Plaintiff Fogarty has failed to establish injury in fact and, therefore, lacks Article III standing.  *Koronthaly*, 2008 U.S. Dist. LEXIS 59024, at *11-15 (holding plaintiff's dissatisfaction with product and demand for damages is insufficient to establish injury in fact and dismissing complaint due to lack of standing).  For the same reasons, dismissal of the Complaint's intentional and negligent misrepresentation claims is also appropriate under Fed. R. Civ. P. 12(b)(1).  *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 367-68 (D.N.J. 2006); *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 555 (E.D. Pa. 2014).

## CONCLUSION

For all of the foregoing reasons, Defendant Church & Dwight respectfully requests that the Complaint be dismissed with prejudice pursuant to Rule 12(b)(1) and Rule 12(b)(6).

Dated: February 20, 2015

Respectfully submitted,

/s/ Wanda L. Ellert
Wanda L. Ellert
**PROSKAUER ROSE LLP**
One Newark Center
Newark, NJ 07102
Tel: (973) 274-3285
Fax: (973) 274-3299
wellert@proskauer.com

*- and -*

---

Court to draw inferences that those elements have been satisfied mandates dismissal.  *See Hughes v. Panasonic Consumer Elecs. Co.*, 2011 U.S. Dist. LEXIS 79504, at *50 (D.N.J. July 21, 2011) (dismissing count where "general allegations of statutory violations and conclusory citations to other states' statutes do not meet the most elementary pleading requirements").

Richard M. Goldstein *
Lawrence I. Weinstein *
Baldassare Vinti *
Andrew S. Wellin *
**PROSKAUER ROSE LLP**
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
* *Pro Hac Vice Application Pending*

*Attorneys for Defendant*
*Church & Dwight Co., Inc.*