Harold P. Weinberger  (*admitted pro hac vice*)
Norman C. Simon (Attorney ID No. #035691997)
Eileen M. Patt (*admitted pro hac vice*)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100

*Attorneys for Defendant*
*Revlon, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELISSA FOGARTY on behalf of herself and all others similarly situated, ) ) ) | **DOCUMENT ELECTRONICALLY FILED** |
| Plaintiff, ) ) ) | |
| v. ) ) ) | Civil Action No 3:14-cv-07086 (FLW)(DEA) |
| CHURCH & DWIGHT, INC., ; THE PROCTER & GAMBLE COMPANY, INC. ; REVLON, INC. ; THE DIAL CORPORATION, INC. ; and KAO USA, ) ) ) ) ) ) | **MOTION DAY: MAY 18, 2015** |
| Defendants. ) | **ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT REVLON, INC.'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ALLEGATIONS .................................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.      PLAINTIFF'S CLAIMS ARE WITHIN THE PRIMARY JURISDICTION OF THE FDA ...................................................................................................................... 4

      A.    The FDA Extensively Regulates Cosmetic Products, and Recognizes that "Unscented" Cosmetics May Contain Fragrance Ingredients ................................... 5

      B.    The Type and Amount of Fragrance Ingredients That May Properly Be Included in a Cosmetic Product Labeled "Unscented" is Within the Primary Jurisdiction of the FDA .................................................................................. 7

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NJCFA ................................. 9

      A.    Plaintiff Fails to Allege Ascertainable Loss .......................................................... 10

      B.    Plaintiff Fails to Allege Unlawful Conduct ......................................................... 13

III.    PLAINTIFF'S INTENTIONAL MISREPRESENTATION CLAIM SHOULD BE DISMISSED ....................................................................................................... 16

      A.    Plaintiff Fails to Allege Harm or Misrepresentation.............................................. 17

      B.    Plaintiff Fails to Allege Reasonable Reliance ....................................................... 17

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY .............................................................................................................. 18

V.     PLAINTIFF CANNOT INVOKE OTHER STATE CONSUMER FRAUD LAWS........ 20

CONCLUSION.................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Arcand v. Brother Int'l Corp.*,
    673 F. Supp. 2d 282 (D.N.J. 2009) ......................................................................18

*Balser v. Hain Celestial Grp., Inc.*,
    No. CV 13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ......................................14

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................15

*Bird v. First Alert, Inc.*,
    No. C 14-3585 (PLH), 2014 WL 7248734 (N.D. Cal. Dec. 19, 2014)............................16 n.13

*Brod v. Sioux Bee Honey Ass'n, Coop.*,
    927 F. Supp. 2d 811 (N.D. Cal. 2013) ...................................................................15

*Carpenter v. BMW N. Am., Inc.*,
    No. CIV. A. 99-CV-214, 1999 WL 415390 (E.D. Pa. June 21, 1999) ...........................20 n.14

*Clark v. Actavis Grp. HF*,
    567 F. Supp. 2d 711 (D.N.J. 2008) ......................................................................9

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) .................................................................12

*Cooper v. Samsung Elecs. Am., Inc.*,
    374 F. App'x 250 (3d Cir.2010) .....................................................................20 n.14

*Coyle v. Hornell Brewing Co.*,
    Civil No. 08-02797 (JBS), 2010 WL 2539386 (D.N.J. June 15, 2010)............................7, 8, 9

*Crozier v. Johnson & Johnson Consumer Cos.*,
    901 F. Supp. 2d 494 (D.N.J. 2012) .....................................................................19

*Dicuio v. Brother Int'l Corp.*,
    Civil Action No. 11-1447 (FLW), 2012 WL 3278917 (D.N.J. Aug. 9, 2012) .......................10

*Fink v. Ricoh Corp.*,
    365 N.J. Super. 520, 839 A.2d 942 (Law Div. 2003) ...........................................20 n.14

*In re Gerber Probiotic Sales Practices Litig.*,
    Civil Action No. 12-835 (JLL), 2014 WL 1310038 (D.N.J. Mar. 31, 2014) .........................19

*In re Gerber Probiotic Sales Practices Litig.*,
    Civil Action No. 12-835 (JLL), 2014 WL 3446667 (D.N.J. July 11, 2014) .....................11-12

*Gomez v. WalMart Stores, Inc.*, No. BC 538639 (Cal. Super. Ct. Mar. 6, 2014) ................ 9 & n.8

*Green v. Green Mountain Coffee Roasters, Inc.*,
279 F.R.D. 275 (D.N.J. 2011) ...........................................................................19

*Hemy v. Perdue Farms, Inc.*,
Civil Action No. 11-888 (FLW), 2011 WL 6002463
(D.N.J. Nov. 30, 2011) .......................................................................................15

*Henderson v. Hertz Corp.*,
No. A-3776-03T5, 2005 WL 4127090
(N.J. Super. Ct. App. Div. June 22, 2006) ........................................................17

*Hoffman v. Nordic Naturals, Inc.*,
Civil Action No. 14-3291(SDW)(SCM), 2015 WL 179539
(D.N.J. Jan. 14, 2015) ...................................................................................12-13

*In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*,
1 F. Supp. 3d 34 (E.D.N.Y. 2014) ............................................................ 21 & n.15

*Hughes v. Panasonic Consumer Elecs. Co.*,
Civil Action No. 10-846 (SDW), 2011 WL 2976839 (D.N.J. July 21, 2011) ........................21

*Ibarrola v. Kind, LLC*, No. 13 C 50377, 2015 WL 1188498 (N.D. Ill. Mar. 12,
2015) .....................................................................................................................14

*Kelly v. Cape Cod Potato Chip Co.*,
No. 14-00119-CV-W-DW, 2015 WL 363147 (W.D. Mo. Jan. 27, 2015) ....................14, 16

*Lee v. Carter-Reed Co.*,
203 N.J. 496, 4 A.3d 561 (2010) ......................................................................11

*Lieberson v. Johnson & Johnson Consumer Cos.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ...............................................9, 10, 13, 18, 19

*In re Magnesium Oxide Antitrust Litig.*,
Civil No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ...........................21

*Maniscalco v. Brother Int'l (USA) Corp.*,
709 F.3d 202 (3d Cir. 2013) ........................................................................20 n.14

*Mann v. TD Bank, N.A.*,
Civil No. 09-1062 (RBK/AMD), 2010 WL 4226526
(D.N.J. Oct. 20, 2010) ........................................................................................11

*Mason v. Coca-Cola Co.*,
774 F. Supp. 2d 699 (D.N.J. 2011) ...............................................................16, 17

*Mason v. Coca-Cola Co.*,
   Civil Action No. 09-0220-NLH-JS, 2010 U.S. Dist. LEXIS 65107
   (D.N.J. June 30, 2010) ...........................................................................................17

*McGuire v. BMW N. Am., LLC*,
   Civil Action No. 13-7356 (JLL), 2014 WL 2566132 (D.N.J. June 6, 2014)...........................20

*Nelson v. Xacta 3000 Inc.*,
   Civil Action No. 08-5426 (MLC), 2010 WL 1931251 (D.N.J. May 12, 2010)......................11

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ....................................................................14

*In re Rockefeller Ctr. Props., Inc., Sec. Litig.*,
   184 F.3d 280 (3d Cir. 1999).................................................................................3 n.4

*Sauro v. L.A Fitness Int'l, LLC*,
   Civil Action No. 12-3682 (JBS/AMD), 2013 U.S. Dist. Lexis 58144
   (D.N.J. Feb, 13, 2013)........................................................................................13

*Smith v. Pizza Hut, Inc.*,
   Civil Action No. 09-01632-CMA-BNB, 2011 WL 2791331
   (D. Colo. July 14, 2011).......................................................................................21

*Stewart v. Smart Balance, Inc.*,
   Civil Action No. 11-6174 (JLL), 2012 WL 4168584 (D.N.J. June 26, 2012).............11, 12 n.9

*Taradejna v. Gen. Mills, Inc.*,
   909 F. Supp. 2d 1128 (D. Minn. 2012).......................................................................9

*Thiedemann v. Mercedes-Benz USA, LLC*,
   183 N.J. 234, 872 A.2d 783 (2005)..........................................................................10

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   Civil No. 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009)..............13 n.11, 16 n.13

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009)..............................................................................21

**Statutes & Rules**

21 C.F.R. § 201.66 ...................................................................................................5

21 C.F.R. § 330.1 ....................................................................................................5

21 U.S.C. § 393 .......................................................................................................5

21 C.F.R. § 701.3 ....................................................................................................5

Fed. R. Civ. P. 9(b) ............................................................................13 n.11

N.J. Stat. Ann. § 56:8-2 (West 2013).................................................................9

**Other Authorities**

Cosmetic Ingredient Labeling, 38 Fed. Reg. 28,912 (Oct. 17, 1973)............................................5

*Cosmetic Labeling Guide*, U.S. Food & Drug Admin.,
     http://www.fda.gov/Cosmetics/Labeling/Regulations/ucm126444.htm (last
     updated Jan. 2, 2015) ..................................................................................6

*Ethylene Brassylate*, Envtl. Working Grp.,
     http://www.ewg.org/skindeep/ingredient/702320/ETHYLENE_BRASSYLATE/
     (last visited Apr. 13, 2015). ..........................................................6 n.7

Joseph F. Fowler & Alexander A. Fisher, Fisher's Contact Dermatitis
     (6th ed. 2008)..................................................................................6 n.7

*Fragrances in Cosmetics*, U.S. Food & Drug Admin.,
     http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/ucm388821.htm
     (last updated Sept. 19, 2014)..........................................................6

Defendant Revlon, Inc. ("Revlon") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the March 12, 2015 Amended Complaint ("Am. Compl.") filed by plaintiff Melissa Fogarty ("Plaintiff").[1]

## PRELIMINARY STATEMENT

Plaintiff purports to bring claims on behalf of a putative nationwide class alleging that the labeling of four Mitchum® brand antiperspirant and deodorant products (the "Products") as "unscented" is false because Plaintiff detected a scent from these products. The entire Amended Complaint should be dismissed for several reasons.[2]

First, because the Federal Food and Drug Administration ("FDA") extensively regulates cosmetics and recognizes that cosmetics labeled as "unscented" may contain fragrance ingredients for masking purposes, the determination of which fragrance ingredients may be included in a cosmetic product labeled "unscented" is within the primary jurisdiction of the FDA.

Second, Plaintiff does not allege that the Products do not serve their central purpose as deodorants and antiperspirants that stop underarm odor and perspiration. Her complaint is that she was unhappy with the smell of the Products and therefore seeks the full purchase price of the Products. This speculative "harm" does not suffice to establish a claim for the full purchase price of the Products under the New Jersey Consumer Fraud Act (the "NJCFA") or New Jersey common law.

---

[1] The Amended Complaint was filed in an apparent attempt to cure the deficiencies of the original Complaint set forth in Revlon's Motion to Dismiss the Complaint, filed on February 20, 2015 (ECF No. 29) ("Original Motion").

[2] Plaintiff asserts the same claims against four other manufacturers of deodorant products. Revlon understands that all other Defendants are moving to dismiss the Amended Complaint on similar or additional grounds. Revlon joins in Defendants' arguments as expressed in their respective motions.

Third, Plaintiff's claims are based solely on her implausible definition of "unscented" as deodorants that are devoid of any scent.  Plaintiff improperly conflates the word "unscented" with "fragrance free" without any basis for the Court to infer that it is plausible to do so.  Even if "unscented" could plausibly be understood to mean "fragrance free," use of the term "unscented" on the Products is not deceptive in context because the labels disclose the presence of the precise ingredients that Plaintiff alleges cause the Products to emit a scent.  Thus, reasonable consumers could not be misled into believing that the Products are devoid of any odor.

Fourth, for the same reason, Plaintiff's common law misrepresentation claim fails because she could not have justifiably or reasonably relied on the "unscented" label in believing that the products do not emit any odor.

Fifth, Plaintiff's claim for breach of implied warranty of merchantability is without merit because Plaintiff does not allege that the Products are unfit for the ordinary purpose for which they are sold, namely, to stop underarm odor and wetness.

Finally, Plaintiff's assertion of alternative claims under the consumer fraud laws of states other than New Jersey is dismissible because the claims are inadequately pled under Fed. R. Civ. P. 8, and Plaintiff, as a New Jersey resident, lacks standing to invoke the laws of other states on behalf of herself or a putative class.

## ALLEGATIONS[3]

As to Revlon, this action involves four Mitchum brand anti-perspirant and deodorant Products: Mitchum Advanced for Men, Mitchum Advanced for Women, Mitchum Clinical for Men, and Mitchum Smart Solid Clinical Performance.  Am. Compl. ¶ 16.  Plaintiff

---

[3] Solely for the purposes of this motion to dismiss, Revlon assumes the truth of all properly pled facts in the Amended Complaint.

resides in New Jersey, and purchased Mitchum Advanced for Women, Mitchum Clinical for Men, and Mitchum Smart Solid Clinical Performance from drugstore.com on October 22, 2014. *Id.* ¶¶ 13, 55, 61, 67. Plaintiff alleges that she purchased Mitchum Advanced for Men at "some time prior to October 22, 2014 from a retail store" but does not allege where or when. *Id.* ¶ 49.

Plaintiff alleges the Products are falsely labeled as "unscented" because they have a "scent . . . due to the fact that [the Products] include[]" certain ingredients. *Id.* ¶¶ 46, 52, 58, 64. Specifically:

- Mitchum Advanced for Men has "a clean, fresh, alcohol, musky scent" "due to the fact that it includes as an ingredient" "Ethylene Brassylate" *Id.* ¶¶ 45-46.

- Mitchum Advanced for Women has "a clean, fresh, alcohol, musky scent" "due to the fact that it includes as an ingredient" "Ethylene Brassylate" *Id.* ¶¶ 51-52.

- Mitchum Clinical for Men has a "clean, fresh, musky and powdery scent" "due to the fact that it includes as ingredients" "Aloe Barbadensis Leaf Extract" and "Ethylene Brassylate" *Id.* ¶¶ 57-58. The label also discloses that the product contains "Parfum (Fragrance)." *See* Declaration of Norman C. Simon, dated April 13, 2015 ("Simon Decl.") at Exh. C.[4]

- Mitchum Smart Solid Clinical Performance has a "clean, fresh, alcohol, antiseptic scent" "due to the fact that it includes as an ingredient" "Parfum (Fragrance)" *Id.* ¶¶ 63-64.

Notwithstanding the fact that the labels of the Products disclose the precise ingredients that Plaintiff alleges cause the Products to emit an odor, Plaintiff claims that Revlon concealed the fact that the Products emit odor. Am. Compl. ¶ 116. And although Plaintiff alleges that the "unscented" statement misleads consumers, the Amended Complaint does not include a definition of "unscented." Rather, Plaintiff cites a dictionary's definition of "scent" as "a distinctive, often agreeable odor"; asserts that "[t]he definition of 'un' is 'not'"; infers from that definition that unscented means "to not have a distinctive, often agreeable odor"; and further

---

[4] The Court may consider the labels for the Products, attached as exhibits to the Simon Declaration, because they are "integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Props., Inc., Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis omitted) (citation and internal quotation marks omitted); *see* Am. Compl. ¶¶ 44-67.

speculates that reasonable consumers share that definition and apply it to deodorant products. Am. Compl. ¶¶ 79-82.[5]

Plaintiff alleges that she "suffered an ascertainable loss in the amount of the purchase price for the Defendants' Products" because she "could not use them for their intended purposes" as "unscented" deodorants. *Id.* ¶¶ 90-91. Plaintiff does not allege, however, that all claims on the Products are baseless or that the Products do not serve their fundamental purpose as deodorants and antiperspirants. The substance of Plaintiff's allegations is that she would have purchased a different deodorant had she known that Defendants' products were not unscented to her liking. *Id.* ¶¶ 87-93.

Based on these allegations, Plaintiff seeks to assert claims on behalf of a putative nationwide class for: (1) violations of the NJCFA (Count I) or, alternatively, of the consumer fraud laws of all states in which putative class members reside (*id.* ¶ 11);[6] (2) breach of implied warranty of merchantability (Count II); and (3) common law intentional misrepresentation (Count III).

## ARGUMENT

## I. PLAINTIFF'S CLAIMS ARE WITHIN THE PRIMARY JURISDICTION OF THE FDA

As set forth below, the FDA extensively regulates over-the-counter ("OTC") drugs that are also cosmetics and recognizes that cosmetics labeled as "unscented" may contain fragrance ingredients. The determination of what fragrance ingredients may be included in an

---

[5] In her original Complaint, Plaintiff alleged that unscented meant "without a distinctive odor." Compl. ¶¶ 59-62. Plaintiff's own changing definitions further demonstrate that her understanding of "unscented" is subjective and cannot form the basis of her claims. (*infra* 14-15).

[6] Plaintiff pleads the alternative claims in the body of the Amended Complaint (at ¶ 11), but not in the counts alleging statutory violations.

OTC drug and cosmetic product labeled "unscented" is therefore within the primary jurisdiction of that agency. Accordingly, Plaintiff's claims should be dismissed or stayed to permit the FDA to decide this issue.

### A. The FDA Extensively Regulates Cosmetic Products, and Recognizes that "Unscented" Cosmetics May Contain Fragrance Ingredients

The labeling of OTC drugs that are also cosmetics, like the Products, is comprehensively regulated by the FDA pursuant to authority granted by the Food, Drug, and Cosmetic Act of 1938 (the "FDCA"). 21 U.S.C. § 393; *see also* 21 C.F.R. § 201.66 (format and content requirements for OTC drug product labeling); 21 C.F.R. § 330.1 (circumstances under which OTC drug will be deemed "not misbranded"). Specifically, FDA regulations mandate that "[t]he outside container or wrapper of the retail package, or the immediate container label if there is no outside container or wrapper" must contain certain information, including "a listing of the established name of each inactive ingredient." 21 C.F.R. § 201.66(c), (c)(8). Because the Products are also cosmetic products, the regulations require that the inactive ingredients be listed in accordance with the regulations governing the designation of ingredients on cosmetics. 21 C.F.R. § 201.66(c)(8). Those regulations mandate that the label of a cosmetic product must contain a declaration of ingredients listing each of the product's components, generally in descending order of predominance, and that such a list must identify each ingredient by the name established for it by the FDA or an FDA-recognized source. 21 C.F.R. § 701.3(a), (c). As the Adopting Release for this regulation states: "Ingredient labeling can be meaningful in preventing consumer deception by precluding product claims that are unreasonable in relation to the ingredients present and by providing consumers with additional information that can contribute to a knowledgeable judgment regarding the reasonableness of the price of the product." Cosmetic Ingredient Labeling, 38 Fed. Reg. 28,912 (Oct. 17, 1973).

Moreover, the FDA has explained that "some products labeled 'unscented' may contain fragrance ingredients. This is because the manufacturer may add just enough fragrance to mask the unpleasant smell of other ingredients, without giving the product a noticeable scent. . . ." *Fragrances in Cosmetics*, U.S. Food & Drug Admin., http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/ucm388821.htm (last updated Sept. 19, 2014). Differentiating such ingredients, the FDA also advises that persons with "fragrance sensitivities" may "want to choose products that are *fragrance free*, and check the ingredient list carefully." *Id.* (emphasis added); *see also Cosmetic Labeling Guide*, U.S. Food & Drug Admin., http://www.fda.gov/Cosmetics/Labeling/Regulations/ucm126444.htm (last updated Jan. 2, 2015) ("The ingredient or mixture of ingredients acting as a masking agent, i.e., covering the undesirable off-odor of a product without adding a discernable odor to it, may be declared by their individual name(s) or as 'fragrance' (in lieu of a better designation). A masking agent present in a product at an insignificant level may be considered an incidental ingredient under § 701.3(1)(2)(iii) in which case it need not be declared on the label."). Consistent with FDA guidance and industry practice, the Products contain masking fragrance ingredients that are declared by their individual names (e.g., "Ethylene Brassylate") or by the designation "Parfum (fragrance)." Simon Decl. Exhs. A-D.[7]

---

[7] The ingredients that Plaintiff challenges are common masking agents. For instance, Plaintiff alleges that Mitchum Advanced for Men, Mitchum Advanced for Women, and Mitchum Clinical for Men have a "musk" scent "due to the fact that [they] include[] as an ingredient" "Ethylene Brassylate," which is a common masking agent. Am. Compl. ¶¶ 46, 52, 58. *See, e.g.*, Joseph F. Fowler & Alexander A. Fisher, Fisher's Contact Dermatitis 398-99 (6th ed. 2008), *available at* https://books.google.com/ ("Some cosmetics and skin care products are labeled 'unscented' but actually contain a low concentration of a 'masking fragrance.' The masking fragrance is intended to cover the fatty odor of soap or the 'medicinal' smell of some chemicals without giving a recognizable aroma of its own. Ethylene Brassylate (Musk T), is often used for this purpose."). Moreover, the Environmental Working Group's Skin Deep Cosmetics Database, a consumer website, states that the "function" of Ethylene Brassylate is "Fragrance Ingredient;

**B.    The Type and Amount of Fragrance Ingredients That May Properly Be Included in a Cosmetic Product Labeled "Unscented" is Within the Primary Jurisdiction of the FDA**

"The doctrine of primary jurisdiction is applicable when an action that is otherwise within the court's jurisdiction raises some issue of fact that falls within the expertise and experience of an administrative agency." *Coyle v. Hornell Brewing Co.*, Civil No. 08-02797 (JBS), 2010 WL 2539386, at *3 (D.N.J. June 15, 2010). As the court noted in *Coyle*, the doctrine "serves to maintain uniformity and consistency, uphold the integrity of a regulatory scheme, and establish a 'workable relationship between the courts and administrative agencies.'" *Id.* (citation and internal quotation marks omitted).

> Although no fixed formula exists for applying this doctrine, courts will generally consider four factors in determining whether the doctrine applies:
> (1)    whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2)    whether the question at issue is particularly within the agency's discretion;
> (3)    whether there exists a substantial danger for inconsistent rulings;
> (4)    whether a prior application to the agency has been made.

*Id.* (citation omitted). If judicial abstention is appropriate "the doctrine requires that a court 'refer' the particular issue to the proper agency before proceeding . . . or dismiss without prejudice should the former unjustly disadvantage the parties." *Id.* (citation omitted).

In *Coyle*, the complaint alleged, *inter alia*, a violation of the NJCFA based on allegedly deceptive labeling of defendants' beverage products as "100% Natural" when they in fact contained High Fructose Corn Syrup (HFCS), which plaintiffs asserted was "a 'highly

MASKING; TONIC." *Ethylene Brassylate*, Envtl. Working Grp., http://www.ewg.org/skindeep/ingredient/702320/ETHYLENE_BRASSYLATE/ (last visited Apr. 13, 2015).

processed sugar substitute' manufactured using artificial enzymes and acids." *Id.* at *1. The court applied the primary jurisdiction doctrine and stayed the action. Applying the four-factor test, the court first found that determining whether HFCS was a "natural" substance "lies within the FDA's particular field of expertise regarding food chemistry and the labeling of food and beverage products." *Id.* at *4 (footnote omitted). Second, the court found that "the use of the term 'natural' as it pertains to food and beverage labeling falls within the FDA's discretion" and that the issue "is appropriately left to the discretion of the FDA, not the Court, in the first instance." *Id.* Third, noting the existence of other cases raising the same issue, the court cited "the danger that this Court's classification of HFCS as either natural or artificial will be inconsistent with that of other courts or with the FDA itself." *Id.* Finally, the court noted that, while neither the parties nor the court had made a prior application to the FDA regarding this issue, the court "should not decide whether HFCS qualifies as 'natural' before attempting to seek guidance from the FDA, the administrative agency with expertise on this matter. The FDA has the capacity to address and resolve the present dispute through the administrative determination process." *Id.*

As in *Coyle*, determining when, if ever, use of the word "unscented" on cosmetic products is false or misleading in light of the type and concentration of masking fragrances included in such products "lies within the FDA's particular field of expertise regarding" cosmetic chemistry and the labeling of cosmetic products. *Id.* at *4. Further, use of the term "unscented" as it pertains to cosmetic labeling is a technical one that "falls within the FDA's discretion" and "is appropriately left to the discretion of the FDA, not the Court, in the first instance." *Id.* Thus, the first two prongs of the primary jurisdiction inquiry should be resolved in favor of Revlon.

The third prong – existence of a substantial danger for inconsistent rulings – favors Revlon as well.  At least one other case has been filed alleging that labeling a cosmetic as "unscented" violates state consumer fraud statutes, and others may be filed in the future.  Class Action Complaint, *Gomez v. WalMart Stores, Inc.*, No. BC 538639 (Cal. Super. Ct. Mar. 6, 2014).[8]  "The increasing volume" of litigation involving the "same or similar issues . . . creates the potential for inconsistent judicial rulings.  This underscores the importance of promoting uniformity by referral of this matter to the FDA." *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012); *see Coyle*, 2010 WL 2539386, at *4.

Although the fourth prong – prior application to the FDA – does not exist here, the failure to make a prior application "is not dispositive." *Clark v. Actavis Grp. HF*, 567 F. Supp. 2d 711, 719 (D.N.J. 2008) (applying doctrine where plaintiffs did not make a prior application to the FDA).  Indeed in *Coyle*, the court deferred to the FDA notwithstanding the absence of a prior application because the issue before it was within the FDA's expertise and jurisdiction.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NJCFA

"To state a *prima facie* case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011); *see also* N.J. Stat. Ann. § 56:8-2 (West 2013).

As set forth more fully below, Plaintiff fails adequately to allege ascertainable loss in the amount of the purchase price because she cannot plausibly allege that the Products are

---

[8] The plaintiff in the case has since requested an entry of dismissal. *Gomez*, No. BC 538639 (Request for Dismissal filed Dec. 16, 2014).

9

worthless or do not work for their intended purposes as deodorants and antiperspirants. Second, Plaintiff fails to allege that Revlon engaged in unlawful conduct because her definition of "unscented" as lacking any discernible odor whatsoever is implausible as applied to deodorants, and improperly conflates the word "unscented" with "fragrance free" without any factual basis for the Court to infer that it is plausible to do so. Moreover, even if "unscented" could plausibly be understood to mean "fragrance free," use of the term "unscented" on the Products is not deceptive in context, because the ingredient listing informs consumers that the Products contain the precise ingredients that Plaintiff challenges.

### A.    Plaintiff Fails to Allege Ascertainable Loss

To demonstrate an ascertainable loss, the plaintiff must establish an "actual loss" that is "quantifiable or measurable," or "real and demonstrable," as opposed to "hypothetical or illusory" or "speculative." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248-52, 872 A.2d 783, 792-96 (2005). There are two methods by which a plaintiff may prove loss: (i) the out-of pocket rule, which applies when a plaintiff can demonstrate that she paid money and is now out-of-pocket; or (ii) the benefit-of-the bargain rule, which applies when a plaintiff cannot demonstrate an out-of-pocket loss, but seeks to recoup what it will cost her to replace what she reasonably believed she was purchasing, which is accomplished by quantifying the difference in value between the promised product and the actual product received. *See, e.g.*, *id.* at 248, 872 A.2d at 792-93, *Dicuio v. Brother Int'l Corp.*, Civil Action No. 11-1447 (FLW), 2012 WL 3278917, at *7-8 (D.N.J. Aug. 9, 2012); *Lieberson*, 865 F. Supp. 2d at 541.

Here, Plaintiff attempts to plead harm solely under the out-of pocket rule "in the amount of the purchase price for the Defendants' Products" because she claims that they "were unusable as unscented deodorants." Am. Compl. ¶¶ 27, 90. But in order to recover the full purchase price of a product under the out-of-pocket rule, a plaintiff must plausibly allege that

"the seller's misrepresentations rendered the product *essentially worthless.*" *See Mann v. TD Bank, N.A.*, Civil No. 09-1062 (RBK/AMD), 2010 WL 4226526, at *5 (D.N.J. Oct. 20, 2010) (emphasis added).  Thus a plaintiff adequately pleads this type of harm only when the product does not work, or where all of the representations about the product are baseless. *See, e.g., Lee v. Carter-Reed Co.*, 203 N.J. 496, 527-28, 4 A.3d 561, 579-80 (2010) (ascertainable loss of dietary supplement was purchase price where plaintiff alleged that "all the representations about the product are baseless" and the product "offered none of the benefits claimed in [defendant's] multi-media advertising campaign . . . the ascertainable loss here is the purchase price of a bottle of broken promises"); *Nelson v. Xacta 3000 Inc.*, Civil Action No. 08-5426 (MLC), 2010 WL 1931251, at *7 (D.N.J. May 12, 2010) (plaintiff adequately pled loss of purchase price where detox foot pads allegedly "'do not work when consumers apply them while they sleep (or during any other time of the day or night for that matter))'" (citation omitted).

Conversely, courts have held that a plaintiff cannot plead out-of-pocket harm in the amount of the purchase price where, as here, the plaintiff does not allege that all of the representations on the product are baseless or that the product does not serve its central purpose, and where the plaintiff would have purchased a different product, as opposed to none at all.  For example, in *Stewart v. Smart Balance, Inc.*, Civil Action No. 11-6174 (JLL), 2012 WL 4168584 (D.N.J. June 26, 2012), the court held that the purchase price of milk allegedly misrepresented to be fat-free "does not reflect the amount of loss sustained" because "the substance of the claims was that Plaintiffs would have bought a different 'fat-free' milk (as opposed to none at all)[,]" and plaintiffs did "not allege that all of the representations about the product are baseless[,]"or "that they paid for a product they did not want or need." *Id.* at *9-10 (citations omitted); *see In re Gerber Probiotic Sales Practices Litig.*, Civil Action No. 12-835 (JLL), 2014 WL 3446667, at

11

*3 (D.N.J. July 11, 2014) (same; "because the substance of the claims is that Plaintiffs would have bought different formula or cereal products if they had known that Defendants' probiotic products did not provide immunity benefits, the retail price does not reflect the amount of loss sustained.") Likewise, in *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012), the court explained that under the NJCFA, plaintiffs could not plead an ascertainable loss of the purchase price of cooking oils allegedly misrepresented as "100% natural" because "plaintiffs do not allege that the Wesson Oils had no value, or that they did not serve their fundamental purpose as cooking oils." *Id.* at 1107 n.55.

Similarly here, the retail price of the Products does not reflect Plaintiff's supposed loss because she does not allege that all claims on the Products are baseless, and the substance of Plaintiff's allegations is that she would have purchased a different deodorant if she knew that Revlon's products were not unscented to her liking. Am. Compl. at ¶¶ 87-93.[9] It is simply not plausible that the Products, which indisputably serve their fundamental purpose as deodorants and antiperspirants, are valueless based on the alleged "unscented" misrepresentation. *See Hoffman v. Nordic Naturals, Inc.*, Civil Action No. 14-3291(SDW)(SCM), 2015 WL 179539, at

---

[9] Plaintiff now attempts to plead around this standard by alleging that "[b]ecause the Defendants' Products were not 'unscented,' Plaintiff and the Class purchased products that they did not want or need." Am. Compl. ¶ 91. This allegation cannot save her deficient claim. As in *Stewart*, 2012 WL 4168584 at *9-10 (*supra* p. 11), the Amended Complaint makes clear that Plaintiff would have purchased a different product labeled "unscented," as opposed to none at all. Indeed, Plaintiff shopped around "in an attempt to locate a truly unscented deodorant," until she found an unnamed deodorant that was unscented to her liking. Am. Compl. ¶¶ 88-89. Parenthetically, Plaintiff's allegation that she discovered an unscented deodorant that she likes demonstrates just how subjective her definition of "unscented" is, and further undermines her claim that the label deceives reasonable consumers. (*infra* 14-15).

*6 (D.N.J. Jan. 14, 2015) ("canned buzzwords" alleging out of pocket loss are "insufficient to 'provide the specificity that is required in pleading ascertainable loss'") (citation omitted).[10]

Because Plaintiff does not and cannot meet the threshold requirement of demonstrating a cognizable and calculable claim of loss due to the alleged NJCFA violation under the only theory of harm alleged in the Amended Complaint, the NJCFA claim is properly dismissed.[11]

**B.    Plaintiff Fails to Allege Unlawful Conduct**

To state a *prima facie* claim under the NJCFA, a plaintiff must also establish "unlawful conduct by the defendant." *Lieberson*, 865 F. Supp. 2d at 538. "[F]or a statement to be a misrepresentation prohibited by the [NJ]CFA, it has to be one which is material to the transaction . . . [and] has the capacity to mislead the average consumer." *Sauro v. L.A Fitness Int'l, LLC*, Civil No. 12-3682 (JBS/AMD), 2013 U.S. Dist. Lexis 58144, at *15 (D.N.J. Feb, 13, 2013) (citations and internal quotation marks omitted).

Plaintiff avers that the word "unscented" on the labels of the Products is misleading because they have a scent, including the supposed aromas of "fresh," "clean" and "antiseptic."    As a preliminary matter, Plaintiff fails to plausibly allege that reasonable consumers believe these alleged aromas are distinctive scents.

---

[10] In response to Revlon's Original Motion, Plaintiff now alleges that the "fundamental purpose" of the Products is "unscented deodorants or deodorants and antisperspirants." Am. Compl. ¶ 92. For the reasons stated above, these "canned buzzwords" do not cure Plaintiff's untenable assertion.

[11] Plaintiff's claims concerning Mitchum Advance for Men are defective for the additional reason that the Amended Complaint again fails to allege where or when she purchased that product. Fed. R. Civ. P. 9(b); *see also In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civil No. 08-939 (DRD), 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (dismissing NJCFA claim where plaintiffs failed to allege where and when they purchased the challenged products).

Second, Plaintiff's definition of "unscented" as completely lacking any discernible scent is implausible as it applies to deodorants because, as set forth above (at 5-6), the FDA and common industry practice recognize that cosmetic products labeled as "unscented" contain fragrance ingredients that mask the odor of other ingredients in the products. *See, e.g., Ibarrola v. Kind, LLC*, No. 13 C 50377, 2015 WL 1188498, at *3-4 (N.D. Ill. Mar. 12, 2015) ("no refined sugars" on a food label was used as "a term of art to distinguish partially refined sugars like [the challenged ingredients] from fully refined sugars like table sugar"; it is "not plausible" for plaintiff to believe that "no refined" sugars means only "naturally occurring" sugars, given the "reality" that all edible sugars are refined to some extent.); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979-80 (C.D. Cal. 2013) ("Given the FTC's findings that the term 'natural' can be used in numerous contexts, it is implausible that 'a significant portion of the general consuming public or of targeted consumers' would be deceived or mislead by the use of the term 'All Natural' on Buitoni Pastas."). A reasonable consumer could plausibly believe that the challenged ingredients are masking agents, and Plaintiff fails to allege facts that it was plausible for her to believe otherwise. Accordingly, "in the absence of any plausible definition of the term ["unscented"], Plaintiff has failed to state a claim that the use of the term was deceptive or misleading" in this case. *Kelly v. Cape Cod Potato Chip Co.*, No. 14-00119-CV-W-DW, 2015 WL 363147, at *1-2 (W.D. Mo. Jan. 27, 2015); *see Balser v. Hain Celestial Grp., Inc.*, No. CV 13-05604-R, 2013 WL 6673617, at *2 (C.D. Cal. Dec. 18, 2013) (dismissing California consumer fraud claim where plaintiff failed to allege plausible definition of challenged claim as applied to products at issue).

Third, Plaintiff's implausible, subjective definition of "unscented" conflates that term with "fragrance free," which is a different claim made on cosmetic labels, with an

14

objectively different meaning. *See supra* 6. But the Amended Complaint alleges no facts from which the Court could infer that the phrase "unscented" reasonably fosters a belief that the Products are "fragrance free," a requirement that must be met under the pleading standard set forth by the Supreme Court in *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007).[12] In *Hemy v. Perdue Farms, Inc.*, Civil Action No. 11-888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011), this Court dismissed a NJCFA claim because the plaintiffs failed to allege how an implied claim could be derived from what was actually on the label at issue. As the court explained, "Plaintiffs are attempting to allege [] that the "Humanely Raised" label is misleading because reasonable consumers would believe that a company that humanely raises its chickens also humanely slaughters its chickens. However, Plaintiffs have not plead any facts from which the Court could infer that the 'Humanely Raised' label reasonably fosters such a belief." *Id.* at *17; *see also Brod v. Sioux Bee Honey Ass'n, Coop.*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (dismissing complaint that was "silent on [how a reasonable consumer would expect honey to contain pollen] with the exception of certain threadbare conclusory recitals" that plaintiff would not have purchased defendant's honey had she known that it did not contain pollen). Plaintiff's subjective, conclusory allegation that she assumed "unscented" means "fragrance free" fails to meet Plaintiff's pleading burden.

Fourth, use of the term "unscented" on the Products is not deceptive in context, because the ingredient listing on the labels of these products discloses the presence of "Parfum (fragrance)" and the other challenged ingredients. Am. Compl. ¶¶ 46, 52, 58, 64; Simon Decl.

---

[12] Plaintiff attempts to cure this flaw by alleging in her Amended Complaint that "[t]his case does not seek recovery for any representation by the Defendants that their products were marketed or sold as 'fragrance free.'" Am. Compl. ¶ 2. This new allegation does not address the fact that Plaintiff's definition of "unscented" deodorants conflates that term with the meaning of "fragrance free," as described above.

Exhs. A-D. Because the labels of the Products disclose the presence of the precise ingredients that Plaintiff alleges cause the Products to emit a scent, reasonable consumers cannot be misled into believing that the Products are devoid of any smell whatsoever.[13] *See, e.g., Kelly*, 2015 WL 363147, at *6 ("Plaintiff's assertion that she was deceived by Defendants' labeling is contradicted by the full disclosure of the challenged ingredients by Defendants. Further, if Plaintiff wished to avoid products containing the challenged ingredients, Defendants provided her with all the information she needed to do so. Thus, the Court finds that Defendants' labeling of the Chips is not deceptive or misleading with regards to the ingredients contained therein."). Accordingly, as a matter of law, Revlon has not engaged in unlawful conduct under the NJCFA.

## III.    PLAINTIFF'S INTENTIONAL MISREPRESENTATION CLAIM SHOULD BE DISMISSED

To state a claim for intentional misrepresentation under New Jersey law, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by Defendant of its falsity; (3) an intention that the plaintiff rely upon the fact; (4) the plaintiff's reasonable reliance upon it; and (5) resulting damages." *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011).

Plaintiff's misrepresentation claim fails for the same reason that her NJCFA claim fails, namely, that Plaintiff has not adequately alleged a misrepresentation or that she suffered an

---

[13] For this reason, Plaintiff's claim that "Defendants also failed to disclose material facts regarding the Products to Plaintiffs [sic] and members of the class – namely, that the Products had a detectible scent" is insufficient. Am. Compl. ¶ 116. There is no actionable "concealment" under the NJCFA because the label discloses the presence of the challenged ingredients and Plaintiff does not allege facts showing that such disclosure was inadequate. *See Bird v. First Alert, Inc.*, No. C 14-3585 (PLH), 2014 WL 7248734, at *7 (N.D. Cal. Dec. 19, 2014) (plaintiff failed to state fraudulent omission claim under California consumer fraud statute because products included disclaimer and complaint failed to "allege any facts showing that the disclosures were inadequate"); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 WL 2940081, at *11-12 (alleged omissions failed to state NJCFA claim; "[i]n order to intend that others rely on the concealment of a fact, the fact must, of course, actually be *concealed*").

out-of-pocket loss in the amount of the purchase price of the Products. Further, because the labels for the Products expressly disclose the existence of the precise ingredients that Plaintiff alleges cause the Products to emit an odor, Plaintiff could not have reasonably relied on the "unscented" label in believing that the Products do not emit any odor.

A.     **Plaintiff Fails to Allege Harm or Misrepresentation**

As discussed above, Plaintiff fails to adequately plead facts demonstrating an actionable misrepresentation or that she suffered an out-of-pocket loss. *See supra* 10-16. Accordingly, Plaintiff's common law misrepresentation claim should be dismissed. *Mason,* 774 F. Supp. 2d at 705 (dismissing complaint; allegations of harm which failed under NJCFA were also insufficient to support intentional and negligent misrepresentation claims); *Henderson v. Hertz Corp.*, No. A-3776-03T5, 2005 WL 4127090, at *8-9 (N.J. Super. Ct. App. Div. June 22, 2006) ("As with our discussion of the [NJCFA's] ascertainable loss requirement, plaintiff's inability to demonstrate that she suffered any loss as a result of Hertz's sale of insurance without a license is fatal to her [intentional misrepresentation] claim."); *Mason v. Coca-Cola Co.*, Civil Action No. 09-0220-NLH-JS, 2010 U.S. Dist. LEXIS 65107, at *22 (D.N.J. June 30, 2010) ("Plaintiffs['] allegations regarding these claims are substantively identical to their allegations regarding the NJCFA claim, and they must fail for the same reasons.").

B.     **Plaintiff Fails to Allege Reasonable Reliance**

Apart from Plaintiff's conclusory statement that she "reasonably relied on the Defendants' representations that their Products were 'unscented,'" Plaintiff has not sufficiently pled the requisite reasonable reliance. Am. Compl. ¶ 138. "A party reasonably relies on a misrepresentation where the 'facts to the contrary were not obvious or did not provide a warning,' or where the relying party did not reasonably pursue further investigation' that would

have revealed 'the falsity of the misrepresentation.'" *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305-06 (D.N.J. 2009) (citation omitted).

Here, Plaintiff's professed reliance on the "unscented" representation on the labels of Defendants' products in believing the deodorants to be devoid of any fragrance is patently unreasonable where that same label, which Plaintiff viewed before purchasing the products, visibly and explicitly discloses the use of the precise ingredients she now alleges cause the Products to emit odor. Am. Compl. ¶¶ 46, 52, 58, 64; *see also Arcand*, 673 F. Supp. 2d at 306 ("Plaintiffs cannot choose which portions of the user manual they will rely on to their alleged detriment and which should be blatantly disregarded. Clearly, upon reading the user manual, Plaintiffs would have realized that the number of pages, and not the weight of the cartridge, governed the life expectancy of the cartridge."). Because further reasonable investigation of the labels of the Products would have revealed the alleged falsity of the "unscented" representation, Plaintiff has failed to allege reasonable reliance. Thus her common law misrepresentation claim fails for this additional reason.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY

Plaintiff asserts a claim for breach of implied warranty on the ground that the "Products were not fit for the ordinary purpose for which they were advertised . . . in that the Products were not unscented deodorants." Am. Compl. ¶ 128. Plaintiff's claim fails, because the ordinary purpose of the Products is to stop underarm odor and wetness, and Plaintiff does not allege that the Products were unfit for that purpose.

The implied warranty of merchantability "requires that a product conform to its ordinary and intended use." *Lieberson*, 865 F. Supp. 2d at 542 (quoting *Hughes v. Panasonic*, Civ. A. No. 10-846, 2011 WL 2976839, at *21 (D.N.J. July 21, 2011) (internal quotation marks

omitted). The warranty is breached where a product is "defective or not fit for the ordinary purpose for which it was intended." *Id.* (internal citation and quotation marks omitted). However, the implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Id.* (quoting *Hughes* at *22) (internal quotation marks omitted).

The ordinary purpose of the Products at issue is to stop underarm odor and wetness. Because there is no allegation that the Products were defective for this purpose, Plaintiff's claim should be dismissed. *See id.* at 543-44 (holding there was no breach of the implied warranty where baby washes and lotions did not calm babies before bedtime as advertised, because plaintiff "has not suggested that the Wash did not wash nor that the Lotion did not moisturize"); *In re Gerber Probiotic Sales Practices Litig.,* Civil Action No. 12-835 (JLL), 2014 WL 1310038, at *14 (D.N.J. Mar. 31, 2014) (denying a motion to dismiss a breach of implied warranty claim where baby food products allegedly contained false label representations because there was no allegation that the products were unfit for their ordinary purpose of providing infant nutrition); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011) (finding no breach of the implied warranty had occurred where plaintiffs' coffee machine brewed incorrect amounts of coffee because plaintiff "has not alleged that his machine would not brew coffee or that it was inoperable").

Despite Plaintiff's allegation that the ordinary purpose of the Products was to function as *unscented* deodorants, the labeling of the Products as "unscented" is insufficient to transform their general purpose and thus give rise to a breach of warranty claim. *See Green*, 279 F.R.D. at 283 (holding that advertising alone cannot alter the ordinary purpose of a product); *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012)

("[E]stablishing a breach of the implied warranties of merchantability and fitness for a particular purpose requires a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it.").

## V.  PLAINTIFF CANNOT INVOKE OTHER STATE CONSUMER FRAUD LAWS

As set forth in Revlon's Original Motion, Plaintiff, a New Jersey resident, lacks standing to invoke other state consumer fraud laws.  Even if Plaintiff had standing, the claims still fail because they are inadequately pled under Fed. R. Civ. P. 8.

In her Amended Complaint, Plaintiff removed the separate count of "Violation of the Consumer Fraud Acts of States Other Than New Jersey" (Compl. ¶¶ 102-113), and now asserts, as an alternative to a nationwide class under the NJCFA, claims "under the consumer fraud acts of other states where members of the [putative nationwide] Class reside."[14]  Am. Compl. ¶ 11.  Plaintiff's alternative claims fail.

As a New Jersey resident, (Am. Compl. ¶ 13), Plaintiff lacks standing to invoke the laws of the other jurisdictions.  *See, e.g., McGuire v. BMW N. Am., LLC*, Civil Action No. 13-7356 (JLL), 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under the laws of states in which he does not reside, or in which he suffered no

---

[14] We note that Plaintiff will be unable to sustain her putative nationwide classes because, as numerous New Jersey courts have recognized, there are actual conflicts between the consumer fraud laws of the fifty states. *See, e.g., Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 570-84, 839 A.2d 942, 974-82 (Law Div. 2003) (examining numerous and significant conflicts between NJCFA and other states' consumer-protection laws); *Carpenter v. BMW N. Am., Inc.*, No. CIV. A. 99-CV-214, 1999 WL 415390 (E.D. Pa. June 21, 1999) (identifying actual conflicts between 50 states' intentional misrepresentation claims).  Further, these claims cannot be applied to out-of-state consumers where, as here, New Jersey has no connection whatsoever to those consumers' purchases or the defendant – indeed, Plaintiff acknowledges that Revlon is based in New York. Am. Compl. ¶ 16. *See Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207-08 (3d Cir. 2013) (examining factors set forth in Restatement of Conflict of Laws §148(2), and concluding that NJCFA cannot be applied to claims of out-of-state consumers where only connection to New Jersey was the location of defendant's principal place of business); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (same).

injury."); *In re Magnesium Oxide Antitrust Litig.*, Civil No. 10-5943 (DRD), 2011 WL 5008090, at *6 (D.N.J. Oct. 20, 2011) (representative plaintiffs could pursue claims under their respective home-states' laws, but could not pursue claims under laws of twenty-five other states from which there were no representative plaintiffs, dismissing named plaintiffs' claims under those other states' laws); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 149 (E.D. Pa. 2009) (same); *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) (same);[15] *Smith v. Pizza Hut, Inc.*, Civil Action No. 09-01632-CMA-BNB, 2011 WL 2791331, at *8 (D. Colo. July 14, 2011) (Colorado plaintiff had standing only to assert claims under Colorado law, noting "[i]t is well established that a plaintiff does not have standing to allege claims on his own behalf under the laws of states where he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws") (citation omitted).  Accordingly, any alternative claims asserted under the laws of other states must be dismissed.

　　　　Plaintiff's alternative claims under other states' laws are defective for the additional reason that such claims are inadequately pled under Rule 8. *See Hughes v. Panasonic Consumer Elecs. Co.*, Civil Action No. 10-846 (SDW), 2011 WL 2976839, at *17 (D.N.J. July 21, 2011) ("general allegations of statutory violations and conclusory citations to other states' statutes do not meet the most elementary pleading requirements under Fed. R. Civ. P. 8.").  Indeed, these claims are not even pled in the counts alleging statutory violations.  Plaintiff's multi-state allegations accordingly should be dismissed.

---

[15] Notably, the court in *In re HSBC Bank* also held that "if Plaintiff seeks leave to amend the [complaint] to add a named representative from each state, the Court, without prejudging the question, notes the obvious fact that it would be difficult for the Court to adjudicate claims under the laws of all of the states listed in the [hypothetical second amended consolidated class action complaint], especially in light of the discrepancies between the states' laws." 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) (citation and internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Revlon respectfully requests that the Amended Complaint be dismissed in its entirety.

Dated: April 13, 2015                    KRAMER LEVIN NAFTALIS & FRANKEL LLP

New York, New York                   /s/ Norman C. Simon

Harold P. Weinberger  (*admitted pro hac vice*)
Norman C. Simon (Attorney ID No. #035691997)
Eileen M. Patt (*admitted pro hac vice*)
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100
hweinberger@kramerlevin.com
nsimon@kramerlevin.com
epatt@kramerlevin.com

*Attorneys for Defendant Revlon, Inc.*

KL3 3012653.1