## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MELISSA FOGARTY,
On behalf of herself and
all others similarly situated

         Plaintiff,

   vs.

CHURCH & DWIGHT, INC.;
THE PROCTOR & GAMBLE
COMPANY, INC.; REVLON, INC.;
THE DIAL CORPORATION;
and KAO USA

         Defendant.

) Civil Action No. 3:14-CV-07086-FLW-DEA
)
) **Filing Date: April 13, 2015**
) **Motion Date: May 18, 2015**
)
) **Oral Argument Requested**
)
)
)
)
)
)
)
)
)

---

## BRIEF IN SUPPORT OF THE DIAL CORPORATION'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

William H. Trousdale
Brian M. English
Tompkins, McGuire, Wachenfeld & Barry
3 Becker Farm Road, Fourth Floor
Roseland, New Jersey 07068-1726
Telephone:  (973) 622-3000
Facsimile:  (973) 623-7780
wtrousdale@tompkinsmcguire.com
benglish@tompkinsmcguire.com

*Attorneys for The Dial Corporation*

*Of  Counsel*

Gregg F. LoCascio, P.C.
Jonathan D. Brightbill
Jonathan Jones
Zachary A. Avallone
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................... 3

III.    LEGAL STANDARD .................................................................................. 6

IV.     ARGUMENT ............................................................................................... 7

        A.    Fogarty Fails To Plead Facts Plausibly Establishing That Reasonable
              Consumers Are Deceived By Dry Idea's "Unscented" Varietal Name ................. 8

        B.    Dry Idea's "Unscented" Varietal Statement Is A Legally Non-Actionable,
              Subjective Statement of Opinion .......................................................... 9

        C.    Fogarty Did Not Suffer Any Ascertainable or Economic Loss ........................... 11

              1.    *Fogarty's Amended Complaint Fails To Plead With Particularity
                    The Location, Time, And Price Of Her Purchase* ..................................... 12

              2.    *Fogarty Fails To Plead With Particularity An Ascertainable Loss* .......... 14

        D.    Fogarty Lacks Standing To Assert Her Claims .................................... 16

        E.    Fogarty Did Not Reasonably Or Justifiably Rely On The "Unscented"
              Varietal Statement ............................................................................. 17

        F.    Fogarty Has Failed To Allege Facts In Support Of Her Claim For Breach
              Of Implied Warranty ........................................................................... 21

V.      CONCLUSION ........................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) (Wolfson, J.) ..................................................... 2, 18, 19, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 6, 7

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007) ................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 6, 7

*BRLI No. 1 Acquisition Corp. v. Klafter*,
   2002 WL 31431469 (D.N.J. Aug. 30, 2002) .......................................................................... 21

*Conner v. Perdue Farms, Inc.*,
   2013 WL 5977361 (D.N.J. Nov. 7, 2013) ............................................................................... 8

*Crozier v. Johnson & Johnson Consumer Cos., Inc.*,
   901 F. Supp. 2d 494 (D.N.J. 2012) ................................................................................ 21, 22

*Dickinson v. Dickinson*,
   137 N.E. 468, 470 (Ill. Sup. Ct. 1922) ................................................................................ 18

*Glass v. BMW of N. Am., LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011) ..................................................................... passim

*Grant v. Turner*,
   505 Fed. App'x. 107, 111 (3d Cir. 2012)
   *cert. denied sub nom. Grant v. FIA Card Servs.*, 133 S. Ct. 2770 (2013) .............................. 12

*Guers v. Jones Lang LaSalle Americas, Inc.*,
   2014 WL 4793021 (D.N.J. Sept. 25, 2014) ............................................................................. 6

*Hemy v. Perdue Farms, Inc.*,
   2011 WL 6002463 (D.N.J. Nov. 30, 2011) (Wolfson, J.) .................................................. 1, 8, 9

*Hughes v. Panasonic Consumer Elecs. Co.*,
   2011 WL 2976839 (D.N.J. July 21, 2011) ...................................................................... passim

*In re Burlington Coat Factory Secs. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................................................. 3

*In re Gerber Probiotic Sales Practices Litig.*,
  2014 WL 1310038 (D.N.J. Mar. 31, 2014) ....................................................... 21, 22

*In re Riddell Concussion Reduction Litig.*,
  2015 WL 224429 (D.N.J. Jan. 15, 2015). ............................................................... 13

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
  2009 WL 2940081 (D.N.J. Sept. 11, 2009) ............................................................. 10

*Koronthaly v. L'Oreal USA, Inc.*,
  374 F. App'x 257 (3d Cir. 2010) ...................................................................... 16, 17

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) (Wolfson, J.) ........................................ 3, 18, 22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 16

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) .................................................................................... 18

*Mason v. Coca-Cola Co.*,
  774 F. Supp. 2d 699 (D.N.J. 2011) ............................................................... 2, 12, 16

*N.J. Citizen Action v. Schering–Plough Corp.*,
  842 A.2d 174 (N.J. App. Div. 2003) .................................................................. 10, 11

*Nappe v. Anschelewitz, Barr, Ansell & Bonello*,
  460 A.2d 161, 165 (N.J. App. Div. 1983)
  *aff'd in part, rev'd in part on unrelated grounds*, 477 A.2d 1224 (N.J. 1984) ......... 18

*Nobile v. Ford Motor Co.*,
  2011 WL 900119 (D.N.J. Mar. 14, 2011) .......................................................... 13, 14

*Parker v. Howmedica Osteonics Corp.*,
  2008 WL 141628 (D.N.J. Jan. 14, 2008) ................................................................. 14

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ...................................................................................... 6

*Romano v. Galaxy Toyota*,
  945 A.2d 49 (N.J. App. Div. 2008) .......................................................................... 15

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984) ................................................................................. 7, 12

*Stewart v. Smart Balance, Inc.*,
  2012 WL 4168584 (D.N.J. June 26, 2012) ............................................................... 14

*Thiedemann v. Mercedes–Benz USA. LLC,*
    872 A.2d 783 (N.J. 2005) ............................................................................ 12

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.,*
    2008 WL 5381227 (D.N.J. Dec. 17, 2008) .............................................. 14

*Valley Forge Christian College v. Americans United for Separation*
    *of Church and State, Inc.,*
    454 U.S. 464 (1982) ..................................................................................... 16

*Zebersky v. Bed Bath & Beyond, Inc.,*
    2006 WL 3454993 (D.N.J. Nov. 29, 2006) .............................................. 14

**Rules**

Fed. R. Civ. P. 12 ........................................................................................... 6

Fed. R. Civ. P. 9 ............................................................................................. 7

Fed. R. Evid. 201 ...................................................................................... 3, 20

**Other Authorities**

American Heritage® Dictionary of the English Language (5th ed. 2011) .............................. 8, 15

U.S. Food & Drug Administration, Fragrances in Cosmetics (Sept. 19, 2014);
    a*vailable at*: http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/ucm388821.htm
    (last accessed Feb. 20, 2015) ....................................................................... 3, 9

## I.    INTRODUCTION

Defendant Dial Corporation ("Dial") moves to dismiss plaintiff Fogarty's complaint in its entirety.  Fogarty's lawsuit alleges that—in her subjective opinion—Dial's "Unscented" varietal of Dry Idea deodorant is inaccurately labeled.  This fails to state a legally actionable and ascertainable harm.

Smell is one of the most individualized of human senses.  Whether it is a penchant for the scent of jasmine or roses, an aversion to the aroma of coffee, or a willingness to pay thousands of dollars for one perfume and mere pennies for another, different consumers have varied, subjective opinions about scents and smells.  In the decades that Dry Idea has been sold in an "Unscented" varietal, millions of satisfied customers have loyally and repeatedly purchased the product.  In doing so, consumers have demonstrated their agreement with Dial that the product truly is "Unscented" as reasonable consumers of deodorants understand that varietal name.  But now, in this era of lawsuits alleging increasingly incredible claims of purportedly deceptive labeling, Ms. Fogarty has suddenly emerged.  Based on her personal subjective opinion of smell, she says that Dry Idea's "Unscented" varietal name is somehow "false."  She alleges this on behalf of a purported class of "*All* persons who purchased" these deodorants—*ever*.  Simply put, there is no merit to these claims.  They cannot survive the pleading stage.

***First***, Fogarty's allegations of falsity fail outright.  She has not pled facts showing that her idiosyncratic opinion of what an "Unscented" deodorant should be—according to Fogarty, devoid of any detectable smell whatsoever—is shared by reasonable consumers.  *See Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *15–*17 (D.N.J. Nov. 30, 2011) (Wolfson, J.).  The whole purpose of a "deodorant" is to add a smelling substance to cover up and mask malodors, with the vast majority of deodorants sold in a wide variety of scents.  In this context, a consumer might expect that an "Unscented" deodorant lacks a strong, perfume-like scent.  But it is

1

unreasonable to expect that a masking underarm "deodorant" will be devoid of any smell whatsoever.  The FDA recognizes this.  Its statements on the labeling of cosmetics reflect that, for example, "products labeled as 'unscented' may contain fragrance ingredients" in order to mask other unpleasant smells or odors.  Regardless, under New Jersey law, "subjective expressions of opinion" such as the naming of a "scent" of a deodorant are not even legally actionable.  *Hughes v. Panasonic Consumer Elecs. Co*., 2011 WL 2976839, at *12 (D.N.J. July 21, 2011).  Fogarty has not pled, and therefore cannot plead, facts establishing that Dry Idea's "Unscented" varietal name is "unlawful."

**Second**, Fogarty failed to plausibly plead facts establishing an "ascertainable loss." Fogarty's complaint does not dispute that, when she purchased Dry Idea, she received a functional and effective deodorant for masking body odor.  Accordingly, her complaints about a perceptible smell to the product are insufficient to entitle her to a full refund of the purchase price as compensation for purported economic harm.  *Mason v. Coca-Cola Co*., 774 F. Supp. 2d 699, 705 (D.N.J. 2011).  In fact, Fogarty has failed to plead any injury-in-fact at all, meaning she also lacks standing under Article III to assert these claims.

**Third**, Fogarty has failed to show she exhibited reasonable and justifiable reliance. Although she alleges she had previously purchased "Unscented" deodorants with purportedly noticeable smells, she did not take the simple step before buying Dry Idea of removing its cap and determining whether it emitted a scent that she found unacceptable.  Nor does she plead that she made any attempt to return the product for her money back and was denied it.   Her allegations are therefore inadequate and her putative reliance is, under the law, unreasonable. *Arcand v. Brother Int'l Corp*., 673 F. Supp. 2d 282, 306 (D.N.J. 2009) (Wolfson, J.).

***Fourth***, Fogarty cannot assert a claim for breach of implied warranty because there's no allegation that Dry Idea does not deodorize or did not mask her body odor. The implied warranty of merchantability applies only to a product's *general* purpose—here, Dry Idea's ability to mask body odor—and expressly does not apply consumer's individual interpretations or expectations. *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011) (Wolfson, J.).

## II.    STATEMENT OF FACTS

Dial Corporation is an Arizona-based company that manufactures and sells a variety of personal care and home care products. This includes a line of deodorants (first introduced in 1978) known as Dry Idea®. Like other deodorants, because of diverse consumer opinions about and preferences for different scents, Dry Idea is sold in a number of varietals: "Fresh," "Powder Fresh," "Regular," "Clean," and "Unscented."[1] As with the other Dry Idea products, the "Unscented" deodorant necessarily contains an amalgamation of ingredients designed to cover up and mask bad body odors and other smells[2]—which is undisputedly the primary reason why anyone buys an underarm deodorant.

---

[1] *See, e.g.*, Dial's website at https://dryidea.com (last accessed April 13, 2015). Under Federal Rule of Evidence 201, this Court can take judicial notice of the well-known practice of selling deodorants in scented varieties, which are readily observable and undisputedly for sale on retail store shelves throughout this district, and described on Dry Idea's website. "The court may take judicial notice at any stage of the proceeding," including motions to dismiss for failure to state claim, and the existence of different varietals are "fact[s] that [are] not subject to reasonable dispute because  . . . [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*. In addition, the website Drugstore.com, where Ms. Fogarty's complaint pleads she did research, shopping, and made purchases, FAC ¶ 88, shows the different varieties of Dial's Dry Idea deodorant and is incorporated by reference into Fogarty's Complaint. *See In re Burlington Coat Factory Secs. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] *See, e.g.*, U.S. Food & Drug Administration, Fragrances in Cosmetics (Sept. 19, 2014); a*vailable at*: http://www.fda.gov/Cosmetics/ProductsIngredients/Ingredients/ucm388821.htm (last accessed April 13, 2015).

On November 12, 2014, Plaintiff Fogarty filed her original complaint. She alleged that Dial, along with sellers of other "unscented" deodorant varietals, uniformly misled her and all other consumers who have ever purchased these products because there was "a noticeable and unmistakable" smell to these products which she claims to perceive. *See* Compl. ¶ 1.

The circumstances surrounding Fogarty's alleged purchase of Dry Idea are highly individualized and curious, to say the least. Fogarty alleged in her original complaint that she first bought Mitchum Men's "Unscented" deodorant in October 2014 for her family members. *Id*. ¶¶ 66–67. Upon opening the package, Fogarty complained that Mitchum Men's "Unscented" varietal allegedly had a detectable smell and was not, in her view, completely odorless. *See id*. ¶ 66. There is no pleading that the deodorant's intended recipient—presumably the stick of Mitchum "Men's" was not for Melissa Fogarty—expressed any concern or dissatisfaction.

Thereafter, purportedly so determined to obtain a deodorant without any smell whatsoever—after having, presumably, purchased "scented" deodorants for her and her family's entire lives until then—Fogarty's original complaint alleged that she went online to the Drugstore.com website. She alleges that she then simultaneously purchased, *en masse*, **all** the other "Unscented" varieties of deodorants she could find there. *Id*. ¶ 67. This allegedly included two kinds of Arm & Hammer® "UNSCENTED," Secret® "unscented," three more Mitchum "UNSCENTED" varieties (now including "Women" Mitchum), Ban® "unscented," and Dry Idea "UNSCENTED" deodorant gel. *Id.* ¶¶ 13–17.

When these other deodorants arrived, Ms. Fogarty alleged she set about opening all the products in her bulk order; she smelled each of them to see if any had perceptible odors or smells; and in her opinion, they all did. *Id*. ¶ 68. Because of this, Ms. Fogarty made the conclusory allegation in her original complaint that she "could not use them for their intended

purposes." *Id*. ¶¶ 68–69.  How these alleged smells prevented the products from being used as underarm deodorants (especially considering deodorants with scents had apparently worked for Fogarty's entire life until then) was never explained or supported by any factual pleading.

On March 12, 2015, after reviewing Dry Idea's (and other defendants') motions to dismiss her allegations, Fogarty filed a First Amended Complaint.  She dropped several claims that were legally baseless (including allegations of unjust enrichment and negligent misrepresentation).  She also changed entirely her allegations regarding her purchase of Dry Idea.  FAC ¶ 87.  In the original complaint, Fogarty pled that she purchased Dry Idea with the other deodorants in October 2014 from Drugstore.com.  Compl. ¶ 67.  She now alleges she "purchased Dry Idea *some time* prior to October 22, 2014 *from a retail store*."  FAC ¶ 72.[3]

Ms. Forgarty's amended complaint also pleads that "Dry Idea is sold with a clear plastic film" that "prevents reasonable consumers from detecting the scent of Dry Idea until after it is purchased and the film is removed."  *Id*. ¶ 72.  But it is an easily verifiable and undeniable fact that there is no such "plastic film" on Dry Idea.  *See* Exs. 1 and 2.[4]  To the contrary, Dry Idea is sold with a removable cap and foil merely affixed by a light adhesive.  *Id*.  Thus, a consumer can peel back the foil and smell the deodorant to determine if it is acceptable.

Given a second chance by her Amended Complaint to plead some sort of legally cognizable "injury-in-fact," Ms. Fogarty failed again.  Though she still alleges that "[she] could not use [the deodorants] for their intended purposes[,]"  FAC ¶ 91, she does ***not*** plead in either complaint that any of these products, once applied to the body, failed to mask body odors and functions as a "deodorant" for masking body malodors.  She does not even plead that she or any

---

[3] All ***emphasis added*** in this memorandum unless otherwise noted.

[4] Exhibits 1 and 2 are attached to the Declaration of Brian M. English, filed concurrently with this memorandum.

other member of her family tried to use them for this primary, advertised purpose.  Nor does Fogarty allege that—like a reasonable consumer—she made any effort to return these products or otherwise obtain a refund because of her purported dissatisfaction with the product "scent." Yet Fogarty nevertheless seeks to become a class action representative whose allegations and experiences are, purportedly, typical of "All persons who purchased" these products—ever. FAC ¶¶ 101, 104.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the complaint "fail[s] to state a claim upon which relief can be granted."  Dismissal is appropriate where a plaintiff's complaint "lacks [the] factual allegations to substantiate" its claims.  *Guers v. Jones Lang LaSalle Ams., Inc.*, 2014 WL 4793021, at *3 (D.N.J. Sept. 25, 2014).

While the court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the nonmoving party, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), that deference "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "[t]he Court need not accept 'unsupported conclusions and unwarranted inferences[.]'"  *Guers*, 2014 WL 4793021, at *2 (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).  Instead, courts can—and in this case should— "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*.  "Facial plausibility" requires that the plaintiff plead enough "factual content" to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678.  The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 9(b) further requires that for "averments of fraud or mistake," including allegations of intentional misrepresentation and violations under the NJCFA, "the circumstances constituting the fraud or mistake shall be stated with particularity." *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *4 (D.N.J. Dec. 29, 2011) (Rule 9(b) applies to NJCFA claims).  To satisfy this heightened standard, the plaintiff must plead or allege the "date, place, or time" of the alleged fraud or otherwise "inject[] precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  A failure to do so warrants dismissal.

## IV.     ARGUMENT

Fogarty has failed to plead facts plausibly establishing that reasonable consumers—as opposed to the idiosyncratic "eggshell" plaintiff that Fogarty at best represents—are deceived by Dry Idea's "Unscented" varietal name.  In fact, a highly subjective expression of opinion like a manufacturer's name for a deodorant's scent is not even legally actionable under New Jersey law.  The contention that "Unscented" is not sufficiently scent-free is as nonsensical as if she sued over the "Clean" varietal not smelling clean enough to her, or that the "Powder Fresh" varietal didn't smell enough like fresh powder to her.  Such subjective claims cannot stand as "unlawful."  Regardless, Fogarty has pled no ascertainable loss, or even any Article III injury-in-fact whatsoever.  Her complaint should be entirely dismissed with prejudice.

### A.    Fogarty Fails To Plead Facts Plausibly Establishing That Reasonable Consumers Are Deceived By Dry Idea's "Unscented" Varietal Name

To establish a *prima facie* case of false or misleading advertising under the NJCFA, Fogarty must allege "unlawful conduct by the defendant[.]" *Glass*, 2011 WL 6887721, at *3. Pleading "unlawful conduct" requires plausible allegations that the conduct at issue will "mislead the average or reasonable consumer." *Conner v. Perdue Farms, Inc*., 2013 WL 5977361, at *6 (D.N.J. Nov. 7, 2013); *Hemy*, 2011 WL 6002463, at *17 (dismissing plaintiffs' allegations because they "ha[d] not plead[ed] any facts" showing that "reasonable consumers would believe" the label meant what the plaintiffs alleged it did). Fogarty did not and cannot do so.

*First*, Fogarty's complaint alleges that when she held Dry Idea "Unscented" up to her nose, she detected a smell. This is not enough to state a claim. Instead, Fogarty must plead facts plausibly establishing that reasonable consumers share her idiosyncratic opinion that an "Unscented" variety of deodorant will be *completely* devoid of *any* detectable smell. They do not. A "deodorant" is, by definition, a "substance" used "to mask or suppress odors." American Heritage® Dictionary of the English Language at 486 (5th ed. 2011). Thus, any reasonable consumer necessarily expects that even an "Unscented" varietal deodorant (and its amalgamation of various ingredients) will have *some* smell in order to serve this intended purpose of covering up and masking bad, unwanted body odors. In fact, rather than interpreting "Un***scented***" to mean entirely without *any* detectible smell, reasonable consumers can only interpret "Unscented" deodorant to refer to the lack of a strong, distinctive, perfume-like scent. This is especially true in the context of other deliberately scented or perfumed deodorant varietals such as "Clean," "Powder Fresh" or "Regular."

*Second*, FDA's statements on the use of fragrances and scents in cosmetics confirm this. FDA acknowledges that "products labeled as 'unscented' ***may contain fragrance ingredients***" in

order to mask other smells and ingredient odors. *See* FDA, "Fragrance in Cosmetics," *supra*, note 2. In other words, there is no expectation that "unscented" products will be wholly devoid of any smell. To the contrary, FDA recognizes that it is lawful and expected that products labeled as "unscented" will have "fragrance" and smell. *Id.* This is further support that reasonable consumers understand "Unscented" merely to mean that the product does not contain a strong, perfume-like scent—not no perceptible smell whatsoever. *See Hemy*, 2011 WL 6002463, at *15 (finding government's non-binding regulations indicative of how reasonable consumers would understand a term).

**Third**, instead of pleading actual facts regarding what reasonable consumers understand and why, Fogarty's complaint relies on "formulaic recitations" and conclusory assertions. For example, she baldly states that "the Class did not receive the benefit of the bargain" because the putative class members "received a product with a noticeable scent that was unusable as an 'unscented' deodorant." FAC ¶ 6. That is insufficient. This Court and others in this district have explained that where plaintiffs "merely state in a conclusory fashion what consumers would expect[,] [s]uch a conclusory statement is not entitled to a presumption of truth under modern pleading standards." *Hemy*, 2011 WL 6002463, at *15–*17 (dismissing plaintiffs' NJCFA claim because "the Plaintiffs' *ipse dixit* does not suffice"). Fogarty has failed to plead actual facts plausibly establishing that naming a deodorant varietal that lacks a strong, perfume-like scent as "Unscented" misleads reasonable consumers and represents "unlawful conduct." Her complaint should be dismissed.

### B.    Dry Idea's "Unscented" Varietal Statement Is A Legally Non-Actionable, Subjective Statement of Opinion

Even if it were conceivable that certain eggshell consumers might understand Dry Idea's "Unscented" varietal name in the manner Fogarty asserts, New Jersey recognizes that "highly

subjective expressions of opinion" are not legally actionable as "false." *Glass*, 2011 WL 6887721, at *7 (dismissing claim after concluding "'Rated 4 stars in recent crash tests. MINI is ready to serve and protect' and 'A powerful ally in the war against loss-of-control'" could not serve as the basis of a NJCFA claim because the "statements [were] vague, highly subjective expressions of opinion, not specific detailed factual assertions"); *see also In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 WL 2940081 at *9 (D.N.J. Sept. 11, 2009). Particularly in the context of the other Dry Idea deodorant scents (e.g., "Fresh," "Powder Fresh," "Regular," "Clean"), Dial's "Unscented" varietal name constitutes a subjective expression of opinion that Fogarty cannot show is "objectively" false and "unlawful."

Within the doctrine of advertising "puffery," New Jersey recognizes that statements representing a manufacturer's opinions or subjective characterizations of a product, rather than specific objectively provable facts, do not constitute "unlawful" advertising. This is because reliance is indisputably an element of the NJCFA (and fraud generally). And "subjective" assertions simply are not statements consumers rely on to be objectively true or false. *See N.J. Citizen Action v. Schering–Plough Corp.*, 842 A.2d 174, 177 (N.J. App. Div. 2003).

Dry Idea's "Unscented" varietal name falls within this category of non-actionable statements. Rather than a specific factual statement that a consumer will not detect *any* odor at all in an underarm deodorant product, "Unscented" is a varietal claim that reflects Dial's general characterization of the product as lacking a strong, perfume-like scent. It is a "vague, highly subjective expression of opinion." In fact, New Jersey courts have previously dismissed misleading advertising cases premised on statements more concrete and objectively definable than Dry Idea's "Unscented" varietal name. For example, in *Hughes*, 2011 WL 2976839, at *12, the court dismissed plaintiff's claims about Panasonic's language describing its televisions'

"industry leading black levels and contrast ratios." *Id*. Even though there are objective markers and metrics for "black levels" and "contrast ratios," the court dismissed the claims of false or misleading advertising because that language was nevertheless a "subjective expression of opinion." *Id*. Therefore, simply because one might be able to conceive of a potential standard for a term—for example, to Fogarty an "Unscented" deodorant should have no perceivable smell—New Jersey recognizes that does not necessarily establish that a phrase is sufficiently specific and factual to be legally actionable.

In *N.J. Citizen Action*, the Appellate Division affirmed a trial court's similar finding that the defendant pharmaceutical company's use of the phrase "'you . . . can lead a normal nearly symptom-free life again'" was not actionable "unlawful conduct" under the NJCFA. 842 A.2d at 176–177. "That contention is meritless," the court explained, because the defendant's statements were "not statements of fact" and consumers would not have construed them as guarantees of "universal effectiveness." *Id*. at 177.

The same logic supports the same result here. Dry Idea's "Unscented" varietal name is a subjective opinion about the products' relative lack of a distinct, perfume-like scent—compared to "Clean," "Powder Fresh," "Regular" and other scents that might be purchased—which reasonable consumers would not "universal[ly]" rely on as an indication that the product lacks any smell at all. *Id*. On these grounds, too, the Court should dismiss Fogarty's claims.

## C.    Fogarty Did Not Suffer Any Ascertainable or Economic Loss

Even if Dry Idea's "Unscented" varietal name was legally actionable as deceptive to reasonable consumers—and it is not—the mere existence of a potentially misleading statement does not create legal liability unless it results in material and "ascertainable loss." *Glass*, 2011 WL 6887721, at *10 ("To state a *prima facie* case under the NJCFA, Plaintiff must also establish an ascertainable loss."). To establish "ascertainable loss" under New Jersey law, plaintiff must

provide "evidence that a fact finder could find or infer that the plaintiff suffered an actual loss." *Id.* This loss must be "quantifiable or measureable," not merely conceivable. *Thiedemann v. Mercedes–Benz USA. LLC*, 872 A.2d 783, 793 (N.J. 2005). Fogarty's claim for intentional misrepresentation similarly requires specific allegations of loss—*i.e.*, allegations of "reliance" that has "resulted in economic loss or injury." *Mason*, 774 F. Supp. 2d at 704. Moreover, because Fogarty must plead fraud "with particularity" under Rule 9(b), she must "inject[] *precision* and some *measure of substantiation*" into her allegations both under the NJCFA and for intentional and negligent misrepresentation. *Seville Indus. Mach. Corp.*, 742 F.2d at 791. She has not done so.

### 1. *Fogarty's Amended Complaint Fails To Plead With Particularity The Location, Time, And Price Of Her Purchase*

After amending her complaint and adjusting her factual allegations, Fogarty does not provide the specificity required under Rule 9(b) because she does not include "particular[]" allegations about her purchase of Dry Idea. Fogarty must "inject precision into [her] allegations," which in turn "requires [her] to plead the date, time, and place of the alleged fraud[.]" *Grant v. Turner*, 505 Fed. App'x. 107, 111 (3d Cir. 2012) *cert. denied sub nom. Grant v. FIA Card Servs.*, 133 S. Ct. 2770 (2013). She cannot simply rest on bare, conclusory allegations of fraud and loss. Her amended complaint has strangely now abandoned her original allegation that she purchased Dry Idea at the Drugstore.com website with her other *en masse* purchases of "unscented" deodorants. *Compare* Compl. ¶¶ 67–68, and FAC ¶¶ 87–88. Instead, now there is *no* particularized allegation as to when or where she bought Dry Idea. All Fogarty says is that "some time prior to October 22, 2014" she allegedly purchased Dry Idea "from a retail store." FAC ¶ 72. Thus, Fogarty's purchase may not even fall within the relevant four- or six-year statutes of limitations, or may be precluded by doctrines such as laches. *See Nobile v.*

*Ford Motor Co.*, 2011 WL 900119, at \*5 n.2 (D.N.J. Mar. 14, 2011) (noting plaintiffs' NJCFA claims were time-barred under the statute of limitations). She also doesn't plead how many sticks of Dry Idea she bought or how much she paid. In fact, instead of pleading the price of Dry Idea at the (unknown) retail locale where she purportedly bought it, Fogarty pleads the price of Dry Idea at Drugstore.com at a time when, according to her pleading, she affirmatively did ***not*** buy it. *See* FAC ¶ 72.

Fogarty's bare, unspecified allegations are insufficient under Rule 9(b). For example, in *In re Riddell Concussion Reduction Litig.*, the plaintiffs alleged misleading statements about the efficacy of football helmets. But the plaintiffs only "provid[ed] a general timeframe for when each Plaintiff purchased Defendants' Helmets." 2015 WL 224429, at \*11 (D.N.J. Jan. 15, 2015). And Plaintiffs did not allege "where they purchased the product at issue, how much they paid, and when they were exposed to Defendants' alleged misrepresentations." *Id*. As a result, the court rejected plaintiffs' allegations as "conclusory" and "insufficient under Rule 9(b), as well as Rule 12(b)(6)." *Id*. Similarly, in *In re Toshiba.*, the plaintiffs alleged that Toshiba made misrepresentations about its HD DVD players. 2009 WL 2940081, at \*13. But the court found that the complaint "[did] not meet the pleading requirements of Fed. R. Civ. P. 9(b) or *Iqbal* with respect to ascertainable loss . . ." because "[r]egarding the ascertainable loss, the Plaintiffs fail[ed] to allege where (and for all Plaintiffs but three—when) they purchased their HD DVD Players; how much they paid for the HD DVD Players; and how much regular DVD players cost at the time (*i.e.*, how much of a 'premium' they claim to have paid for their HD DVD Players)." Without those required, specific allegations, plaintiff failed to state a claim. *Id.*

The same analysis requires dismissal of Fogarty's case here.  Fogarty does not properly allege the details of her fraud-based claims "with particularity"; her complaint is therefore inadequate under Rule 9(b) and warrants dismissal. [5]

### 2.    *Fogarty Fails To Plead With Particularity An Ascertainable Loss*

Fogarty's revised complaint also fails to adequately plead an actual, ascertainable loss based on the "unscented" name for the Dry Idea varietal she purchased.  It instead makes the conclusory assertion that because the "Products were scented, Plaintiff could not use them for their intended purposes—as unscented deodorants or deodorants and antiperspirants."  FAC ¶ 91. She therefore pleads that her purported loss was the entire "purchase price for the Defendants' Products[.]"  *Id*. ¶ 90.  However, to plead an "ascertainable loss," Fogarty must present facts establishing that "'***all*** of the representations about the product are baseless'" or that she bought a product (deodorant) "that [she] did not want or need" in its entirety.  *Stewart v. Smart Balance, Inc*., 2012 WL 4168584, at *10 (D.N.J. June 26, 2012) (finding entire purchase price of milk allegedly misrepresented to be fat free "does not reflect the amount of loss sustained"); *Parker v. Howmedica Osteonics Corp*., 2008 WL 141628, at *4 (D.N.J. Jan. 14, 2008) (rejecting plaintiffs'

---

[5] *See also Torres-Hernandez v. CVT Prepaid Solutions, Inc*., 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008) (finding plaintiff's allegations "do not withstand a motion to dismiss" because "[a]t its most basic level, Plaintiff has failed to allege when he purchased his calling card(s), what he relied upon regarding the minutes he purchased and how many calling minutes he actually received.") *Zebersky v. Bed Bath & Beyond, Inc*., 2006 WL 3454993, at *4 (D.N.J. Nov. 29, 2006) (dismissing plaintiff's allegation under Rule 9(b) because "Plaintiff fails to allege any specifics regarding her own transaction including what product plaintiff purchased, when the product was purchased, where the product was purchased, and how the misrepresentation led plaintiff to sustain an ascertainable loss."); *Nobile*, 2011 WL 900119, at *1 n.1 ("Basic facts that would be integral to the disposition of the claims at issue in this case have not been plead. For example, the Complaint does not state where the three named Plaintiffs purchased their vehicle, the date on which the Plaintiffs purchased their vehicle, the date on which their transmission malfunctioned, or how their transmissions malfunctioned.") (citation omitted).

allegations that a defective squeaking in their hip transplants rendered the entire purchase price of the implants an "ascertainable loss" under the NJCFA). She did not do so.

In the amended complaint, Fogarty attempted to bolster her pleading as to ascertainable loss by revising her complaint to allege that class members "did not want or need" the "Defendants' Products" because they emitted a detectable smell. FAC ¶ 91. But her allegations of loss must be based on *objective* facts, not her own subjective devaluation of the product. *Romano v. Galaxy Toyota*, 945 A.2d 49, 55 (N.J. App. Div. 2008) ("Plaintiffs must suffer 'an *objectively* ascertainable loss or damage'"). Her formulaic recitations of claim standards and baldly conclusory statements do not satisfy this burden.

For decades, millions of consumers have purchased, used, and enjoyed Dry Idea's "Unscented" deodorant, receiving exactly what they expected and were willing to pay for: a deodorizing product for covering up malodors of the body. Importantly, Fogarty never alleges (over the course of two complaints) that the deodorant failed to serve this fundamental purpose of "mask[ing] or suppress[ing] odor" in the arm pits. American Heritage® Dictionary of the English Language at 486. More critically, Fogarty does not allege that, in the absence of the "Unscented" name, she would not have purchased *any* deodorant at all for her and her family. Absent such facts—which Fogarty did not and surely cannot ever plead consistent with Rule 11—Fogarty has not pled and cannot plausibly plead that the Dry Idea deodorant was entirely worthless and without functional value. *Stewart*, 2012 WL 4168584, at *9 ("because the substance of the claims is that Plaintiffs would have bought a different 'fat free' milk product if they had known [about the alleged misrepresentation] the purchase price does not reflect the amount of loss[.]"). She therefore cannot claim that the deodorant's *entire* purchase price was her objective "ascertainable loss."

15

In *Mason*, 774 F. Supp. 2d at 705, the court dismissed claims under the NJCFA and for intentional misrepresentation where plaintiffs alleged that they thought the "Plus" in "Diet Coke Plus" alluded to vitamins and minerals. Because "plaintiffs ha[d] not adequately pled facts showing how they experienced any out-of-pocket loss because of their purchases, or that the soda they bought was worth an amount of money less than the soda they were promised," the complaint was dismissed. The same analysis applies here. Fogarty has failed to plead facts with the requisite "particularity," "precision," and "substantiation" to show that her alleged preference for the smell of "Unscented" deodorant varietals resulted in *any* objective loss or prejudice to her—much less a loss amounting to the *entire* purchase price of the deodorant. Her claims under the NJCFA and for intentional misrepresentation should be dismissed with prejudice.

**D.    Fogarty Lacks Standing To Assert Her Claims**

Fogarty has not only failed to plead ascertainable loss under New Jersey state laws, her conclusory allegations fail to establish the minimum requirements of constitutional standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). For Article III standing Fogarty must allege and plausibly substantiate an "injury-in-fact." *Id.* at 573. The injury must be "concrete" and "particularized," not "conjectural or hypothetical." *Id.* at 560. Therefore, she must "'show that [s]he personally has suffered some actual or threatened injury.'" *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Fogarty has suffered no such injury-in-fact here.

Fogarty makes no allegation of any physical harm. Nor, as explained above, has Fogarty pled any plausible allegations of pecuniary harm or actual reliance on a false belief or understanding about Dry Idea's meaning of "Unscented." Without such allegations supporting an injury-in-fact, Fogarty lacks standing to pursue her hypothetical claims and her case must be dismissed. *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010)

16

(dismissing plaintiff's claims for lack of injury-in-fact after she claimed that she was misled into buying lipstick she didn't want).

In *Koronthaly*, a plaintiff purchased lipstick that contained lead. *Id*. at 258. Plaintiff alleged that she didn't know the lipstick contained lead when she bought it, and she stopped using and buying the lipstick after learning that it contained lead. *Id*. Nevertheless, the court explained, "Koronthaly . . . has asserted only a subjective allegation that the trace amounts of lead in the lipsticks are unacceptable to her[.]" *Id*. at 259. That was insufficient. "Absent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, Koronthaly has not demonstrated a concrete injury-in-fact." *Id*.

The same analysis applies here. Like Koronthaly, Fogarty purchased a cosmetic product. She purportedly then decided that it did not meet her own idiosyncratic expectations for an "Unscented" named deodorant—as she plainly understood might occur prior to purchase. *See* FAC ¶¶ 87–88. Nevertheless, Fogarty does not allege "that [the deodorant] failed to work for its intended purpose or was worth objectively less than what one could reasonably expect[.]" *Koronthaly*, 374 F. App'x at 259. In other words, there is no allegation that Dry Idea does not "mask or suppress odor"; no allegation that she paid a premium for "Unscented" deodorant compared to "Fresh," "Regular," or other scents; and no allegation that the deodorant was "objectively" worth less than other "scented" or "Unscented" named deodorants. As a result, Fogarty lacks injury-in-fact and the Court should dismiss her claims in their entirety.

### E.   Fogarty Did Not Reasonably Or Justifiably Rely On The "Unscented" Varietal Statement

Fogarty's claims are additionally improper and should be dismissed because *she*, at the very least, did not exhibit reasonable or justifiable reliance; therefore, the "Unscented" varietal

name was not the cause of the unspecified harm she asserts. To plead an intentional misrepresentation claim, Fogarty must allege *reasonable* reliance, which means she must have reasonably pursued further investigation "that would have revealed the falsity of the misrepresentation." *Arcand*, 673 F. Supp. 2d at 305–06 (Wolfson, J.); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 460 A.2d 161, 165 (N.J. App. Div. 1983) *aff'd in part, rev'd in part on unrelated grounds*, 477 A.2d 1224 (N.J. 1984) (quoting *Dickinson v. Dickinson*, 137 N.E. 468, 470 (Ill. Sup. Ct. 1922)) (explaining that a person "is not justified in relying on representations made, when he has ample opportunity to ascertain the truth of the representations before he acts. . . . If one does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations."). Moreover, to establish liability for violations of the NJCFA and breach of an implied warranty, Fogarty must similarly establish that the allegedly false advertising statement at issue actually caused her harm. *Lieberson*, 865 F. Supp. 2d at 538 (causation required under the NJCFA); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 n.8 (3d Cir. 2012) (causation required for breach of implied warranty). She did not do so.

To the contrary, Fogarty's complaint demonstrates that she ***knew*** after her purchase of Mitchum Men's that "Unscented" did not uniformly mean completely without odor or smell. Fogarty alleges that she first purchased Mitchum Men's deodorant and purportedly found it had an unacceptable smell. FAC ¶ 87. Afterwards, Fogarty acknowledges that she bought the other products *en masse* merely "in ***hopes*** of finding ***one*** unscented deodorant that was truly unscented" in her opinion. *Id.* ¶ 88. In other words, her own pleadings reflect that she ***knew*** her opinion of "Unscented" was likely to differ from the opinions of the various manufacturers. Therefore, when making her deodorant purchases, she did not actually rely on or expect

18

"Unscented" deodorant names to mean the product would be completely devoid of any perceptible smell.

In *Arcand*, this Court dismissed the fraud claims of two plaintiffs who claimed that their printer misleadingly indicated that toner cartridges needed to be replaced when there was still toner remaining in the cartridges. 673 F. Supp. 2d at 289–90. It turned out that the printer's user manual made clear how many pages could be printed with each cartridge, and there was no allegation that cartridges did not or could not supply enough toner to print the specified number of pages. *Id*. at 306. Because reasonable investigation (*i.e.*, reading the relevant sections of the printer's user manual) would have prevented the plaintiffs from allegedly being misled, the court dismissed their fraud claims.

While Fogarty was obligated to "reasonably pursue further investigation" that would have revealed whether Dry Idea truly satisfied her definition of Unscented before purchasing that product, *id*., her amended complaint reflects that she did not take any steps to determine whether Dry Idea emitted any perceivable odors or smells. Fogarty tries to excuse her lack of diligence by pleading that Dry Idea "is sold with a clear plastic film that is attached to the dispensing area of the packaging." FAC ¶ 71. But that is simply false. *See* Exs. 1 and 2.

 

As Fogarty, the Court, or anybody else can indisputably verify and take notice of by walking into any New Jersey drug or grocery store, Dry Idea's packaging does not include any clear plastic film.[6]  Instead, a potential customer can remove the cap, peel back the edge of the foil cover on the gel container (which is only affixed by way of a light adhesive permitting the replacement of the foil), and *actually smell the product* prior to purchase.  If the smell does not meet a consumer's individual preferences—*e.g.*, if there is some detectable smell that the potential customer finds unacceptable—the potential customer can simply push the foil back into place, put the cap back on, and return the stick to the store shelf.

Fogarty easily could have determined whether Dry Idea "Unscented" satisfied her idiosyncratic preference without buying it.  She could have taken a moment to actually smell the

---

[6] The Court can take judicial notice of the fact that Dry Idea is sold without any clear plastic film wrapped around and stuck to the packaging, as it is a "fact that is not subject to reasonable dispute because" it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—*e.g.*, the store shelves of every retail drugstore around the courthouse.  *See* Fed. R. Evid. 201(b).

product at the (unknown) store.[7]  Because she did not do so, she has failed to show that she reasonably or justifiably relied upon and was caused harm by Dry Idea's varietal name.  *Arcand*, 673 F. Supp. 2d at 289–90; *BRLI No. 1 Acquisition Corp. v. Klafter*, 2002 WL 31431469, at *7 (D.N.J. Aug. 30, 2002) (finding no reasonable reliance because of the plaintiffs' failure to adequately investigate).  For this reason, too, her claim should be dismissed.

### F. Fogarty Has Failed To Allege Facts In Support Of Her Claim For Breach Of Implied Warranty

While dropping the negligent misrepresentation, unjust enrichment, and multi-state consumer protection claims (all clearly precluded under federal and New Jersey law), Fogarty's Amended Complaint now adds a new claim for breach of implied warranty.  FAC ¶¶ 125–131. Fogarty alleges that Dry Idea was not fit "for the ordinary use for which it was sold—that is, an unscented deodorant."  *Id.* ¶ 126.  But this claim fares no better than any of Fogarty's abandoned causes of action.

"[E]stablishing a breach of the implied warranties of merchantability and fitness for a particular purpose requires a showing regarding the product's ***functionality***, not the advertisements that allegedly induced a customer to purchase it."  *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012).  "'Merchantability' requires that a product conform to its ***ordinary and intended use***[,]" *Hughes*, 2011 WL 2976839, at *21 (citation omitted)—*i.e.*, the product sold must be "reasonably fit for the ***general*** purpose for which it is manufactured and sold."  *In re Gerber Probiotic Sales Practices Litig.*, 2014 WL 1310038, at *13 (D.N.J. Mar. 31, 2014) (emphasis added) (citations omitted).  "The implied

---

[7] Given that Fogarty does not know where she bought Dry Idea, when she bought it, or how much she paid, and she misremembers or misstates (or misrepresents) its packaging, it is fair wonder whether she ever actually bought Dry Idea at all.

warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer." *Hughes,* 2011 WL 2976839, at *22 (internal quotation omitted).

Here, "merchantability" merely requires that Dial's "Unscented" Dry Idea deodorant accomplish its general purpose and function (masking unwanted body odor). Fogarty cannot argue that it's unfit for that ordinary purpose simply because it did not "precisely fulfill [her] expectation[s.]" *Id*. In fact, federal courts in New Jersey have repeatedly and roundly rejected "false advertising" allegations, like Fogarty's, that are mischaracterized as "breach of implied warranty" claims.

In *Lieberson*, the plaintiff filed suit after buying baby bath products advertised as helping babies sleep better. 865 F. Supp. 2d at 542–43. The plaintiff argued that the products did not actually help babies sleep better and therefore the defendant "breached the implied warranty of merchantability" because "the general purpose of the Products was to function as a sleep aid[.]" *Id*. This Court rejected that argument. It explained that "although the Products may have been advertised as helping babies sleep, such advertising alone can not transform the 'general' purpose of soap and lotion into something entirely unrelated." *Id*. at 543. In *Crozier*, two plaintiffs similarly alleged a breach of implied warranty claim because the defendant sold an antiseptic spray with packaging that suggested the spray contained antibiotics, even though it did not. 901 F. Supp. 2d at 497. Here again, the the court dismissed that claim with prejudice, explaining that "Plaintiffs have not alleged that the spray was defective or that it failed to provide infection protection and pain relief, the purposes for which it is intended." *Id*. at 509. Likewise, in *In re Gerber*, plaintiffs brought suit against Gerber for highlighting on its label the inclusion of probiotics in its infant food. 2014 WL 1310038, at *1–*3. The court rejected their merchantability claims because "Plaintiffs [did] not allege[] that the products at issue were

defective or unfit for consumption"; they only argued that "false and misleading advertisements induced them to purchase the products and that the products did not conform to the promises and affirmations made on the container or label of goods." *Id*. at *14 (internal quotation omitted).

Fogarty's claim is indistinguishable. She does not allege that Dry Idea failed to serve its deodorizing function or was otherwise functionally useless. She simply claims it did not have all of the attributes she thought it should have, given her interpretation of its label. That does not state a claim for breach of implied warranty.

## V.    CONCLUSION

Dial respectfully requests that the Court dismiss Fogarty's complaint in its entirety and with prejudice. She has failed to plead—and cannot plead— facts plausibly showing that Dial's "Unscented" deodorant varietal name is false or misleading to reasonable consumers, or that this product name caused her any ascertainable loss or other injury.


Dated:  April 13, 2015                              Respectfully submitted,


                                        By:   */s/ Brian M. English*
                                              _____
                                              William H. Trousdale
                                              Brian M. English
*Of Counsel*                                   Tompkins, McGuire, Wachenfeld & Barry
                                              3 Becker Farm Road, Fourth Floor
Gregg F. LoCascio, P.C.                        Roseland, New Jersey 07068-1726
Jonathan D. Brightbill                         Telephone:  (973) 622-3000
Jonathan Jones                                 Facsimile:  (973) 623-7780
Zachary A. Avallone                            wtrousdale@tompkinsmcguire.com
KIRKLAND & ELLIS LLP                           benglish@tompkinsmcguire.com
655 Fifteenth Street, N.W.
Washington, D.C.  20005                        *Attorneys for The Dial Corporation*
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record are being served with a copy

of the attached **BRIEF IN SUPPORT OF THE DIAL CORPORATION'S MOTION TO**

**DISMISS THE FIRST AMENDED COMPLAINT** via the CM/ECF system on April 13,

2015.


Executed this 13th day of April 2015.

/s/ Brian M. English